UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD NOVAK and ADAM WENZEL,

                Plaintiffs,                    Case No. 1:21-cv-12008

v.                                      Honorable Thomas L. Ludington
                                      United States District Judge

SHERIFF WILLIAM L. FEDERSPIEL,
in his official and personal capacities,

                Defendant.

_____/

**OPINION AND ORDER STAYING CASE UNDER (1) *PULLMAN* ABSTENTION,
(2) *BURFORD* ABSTENTION, AND (3) COURT'S INHERENT AUTHORITY,
(4) CERTIFYING QUESTIONS TO MICHIGAN SUPREME COURT, (5) DIRECTING
PARTIES TO SHOW CAUSE FOR WHY THEY HAVE NOT INITIATED
FORFEITURE PROCEEDINGS, (6) STRIKING DUPLICATIVE MOTION AND
(7) STRIKING AMENDED COMPLAINT**

After a domestic dispute at a "deer-hunting cabin" in 2017, Saginaw County Sheriff's

deputies seized 14 firearms from Benjamin Heinrich.

Attempting to retrieve the firearms from the "Saginaw County Sheriff's Office," Heinrich's

relatives brought unsuccessful claim-and-delivery actions in two Saginaw County courts. In the

first case, the Saginaw County Circuit Court also denied Plaintiff leave to add "futile" § 1983

claims. The second case, which Plaintiffs filed in the Saginaw County District Court, is on appeal.

Frustrated with their progress in Saginaw County, Heinrich's relatives brought a third

claim-and-delivery action in this Court, adding § 1983 claims alleging violations of (1) the Fourth

Amendment, (2) the Takings Clause, (3) procedural due process, and (4) substantive due process.

*See* ECF No. 1 at PageID.6–13.

Because the pending state-law case would resolve both possession and ownership of the

firearms, this Court stayed the case under *Colorado River* abstention. Plaintiffs appealed, and the

Sixth Circuit reversed, noting that Plaintiff's federal complaint sought not only the firearms but also punitive damages and attorney's fees. *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *3 (6th Cir. Aug. 2, 2022). Even though "[b]oth cases indisputably rest on the banks of the same facts," the Sixth Circuit held that the "claims and requests for relief vary between the state and federal actions so much so that" *Colorado River* abstention was not warranted. *Id.* Yet, it added, this does "not diminish the district court's inherent power to manage its docket and stay the resolution of discrete claims until after the state court's proceedings have come to a close." *Id.*

On remand, the parties have filed cross-motions for summary judgment on Plaintiffs' claim-and-delivery action. While factually disputing whether the Saginaw County Sheriff's Office is lawfully detaining 14 firearms it seized from Heinrich, the parties are *de facto* disputing the interplay between Michigan's forfeiture statutes on the one hand and a civil action for claim and delivery on the other. The question becomes "May a purportedly innocent owner of personal property that was lawfully seized from another person, later convicted, seek the property through a civil action for claim and delivery without initiating forfeiture proceedings in the criminal court?"

The case will be stayed under *Pullman* abstention, *Burford* abstention, and this Court's inherent authority so that the parties can certify gateway questions of Michigan's forfeiture statutes to the Michigan Supreme Court. And the parties will be directed to show cause for why they have not initiated forfeiture proceedings.

## I.

### A.

On October 24, 2017, while drunk and frustrated with his crying daughter, Benjamin Joseph Heinrich marched into his bedroom, opened an unlocked gun cabinet less than two feet from his bed, pulled out a shotgun, and forced "H," Heinrich's daughter's mother, to "leave by

gunpoint." ECF Nos. 2-2 at PageID.48–49; 10-9 at PageID.429. H fled, then Heinrich "put the gun back in the [cabinet] and walked out of the room." ECF No. 2-2 at PageID.49. H called the police and gave them a cell-phone video of the assault. *Id.* at PageID.50. Officers from the Saginaw County Sheriff's Office and Chesaning Police Department arrested Heinrich for felonious assault, MICH. COMP. LAWS § 750.82 (2004), and domestic violence, MICH. COMP. LAWS § 750.81(2) (2016). ECF Nos. 2-2 at PageID.48; 2-4 at PageID.57; *see also People v. Heinrich*, No. 17-006720-FY (Mich. 70th Dist. Ct. Saginaw Cnty. filed Oct. 25, 2017).

From Heinrich's gun cabinet, the officers seized the shotgun and 13 other firearms. ECF No. 2-2 at PageID.48–49. The police report contains an inventory list of the 14 firearms that the Sheriffs seized. *See id.* at PageID.50–55. The firearm Heinrich used was a New England Firearms Pardner Model .410 GA shotgun (SN: NB218049). *See id.* at PageID.53. According to the police report, nine of the remaining firearms have serial numbers, but four do not. *See id.* at PageID.50–55. The firearms without a serial number are a "Dumoulin & Co" shotgun, a "Kodiak 260" rifle, a .22 caliber "Silver Remington Revolver pistol," and a "Remington 572" rifle. *See id.* The remaining nine firearms are a Remington 7600 rifle (SN: 8333002), a Remington 870 shotgun (SN: T123283V), a Remington 710 rifle (SN: 71116295), a Colman 781 air-soft rifle (SN: 489501837), a Winchester 94 rile (SN: 1806102), a Marlin 60 rifle (SN: 00231057), a Remington 1100 rifle (SN: 104238X), a Savage 2204 rifle (SN: 410), and a Gamemaster 760 rifle (SN: A7080267). *Id.* The firearms without serial numbers are presumptively contraband, *see* MICH. COMP. LAWS § 750.230 (2004), but might be exempt as "antique firearms," *see* MICH. COMP. LAWS § 750.231a(2) (2012).

The parties dispute the legal authority for the seizures but not their lawfulness. The police report inconsistently provides that "14 guns were placed into evidence, 13 were for safe keeping."

ECF No. 2-2 at PageID.50. Yet only three of the firearms in the police report have a "status" of "Held for Safe Keeping." *See id.* at PageID.50–55. At the state circuit court, Plaintiffs argued the 14 firearms were seized "for whatever reasons." ECF No. 11-13 at PageID.1120. But during discovery, Defendant answered that "the [14] firearms were seized incident to the arrest of a criminal Defendant who has not claimed ownership nor requested return." ECF No. 11-6 at PageID.973. At the state district court, Plaintiffs argued "the [14] firearms were not 'seized' by the Sheriff's Office as that term means under MCL 600.4702 but instead were taken into custody merely for 'safekeeping.'" ECF No. 2-11 at PageID.94. There, Defendant maintained the position that all 14 firearms were seized "incident to the arrest of Joseph Heinrich." ECF No. 11-21 at PageID.1220, 31. Plaintiffs' federal complaint shifts gears again, alleging that "[t]he 13 were taken to Defendant's office for 'safekeeping;' the fourteenth was seized as evidence." ECF Nos. 1 at PageID.2, 4–5; 2 at PageID.35.

On November 30, 2017, Heinrich pleaded guilty to domestic violence under § 750.81(2). *See* ECF No. 2-4 at PageID.58. Convicted of domestic violence, Heinrich could not legally possess firearms under federal or state law. ECF No. 20 at PageID.1542 (first citing 18 U.S.C. § 922(g)(9) (2015); and then citing MICH. COMP. LAWS § 750.224(f) (2004)); *see also id.* at PageID.1556.

Defendant's internal email reflects that sometime "soon after" the incident, but no later than June 1, 2018, two of Heinrich's relatives—Plaintiffs Gerald Novak and Adam Wenzel[1]—started "calling and asking for the guns back." *See* ECF No. 2-5 at PageID.60–61. Plaintiffs, however, maintain that "they sought the return of the firearms" in "early 2019." ECF No. 2 at PageID.37. Although Plaintiffs made "numerous calls to [Defendant], it refuses to return the 14

---

[1] Gerald Novak is Heinrich's uncle, and Adam Wenzel is Heinrich's step-cousin once removed. *See* ECF Nos. 2-5 at PageID.61; 2-6 at PageID.63.

firearms." ECF No. 11-2 at PageID.910; *see also* ECF No. 2-5 at PageID.61 (statement of Detective Jeffrey Kruszka) ("I replied too bad, no proof of ownership, and the one who had last custody of the guns was a violent drunk.").

In December 2017, Judge A.T. Frank of the Seventieth District Court of Saginaw County sentenced Heinrich to one year of probation. ECF No. 2-4 at PageID.59. Heinrich began probation in January 2018, *id.*, completed it in December 2018, ECF No. 11-2 at PageID.921, and was discharged from it in January 2019, ECF No. 2-4 at PageID.59.

**B.**

Three months after Heinrich's probation ended, Plaintiffs sought the firearms in a claim-and-delivery action in the Tenth Circuit Court of Saginaw County. *See Novak v. Saginaw Cnty. Sheriff's Off.*, No. 19-039371-PD (Mich. 10th Cir. Ct. Saginaw Cnty. filed May 13, 2019). In March 2020, Heinrich disclaimed ownership of the firearms—for the first time—bolstering Plaintiffs' claims. *See* ECF No. 11-26 at PageID.1291–92.

In an August 2020 order granting in part Plaintiffs' motion for leave to amend the complaint, Judge André R. Borrello suggested Plaintiffs' exclusive remedy was to seek "return of the weapons through [forfeiture]." ECF No. 11-2 at PageID.1114 (first citing MICH. COMP. LAWS § 600.4702(1)–(2) (2015); then citing MICH. COMP. LAWS § 600.4705(1) (2015); and then citing MICH. COMP. LAWS §§ 750.239, .239a (2010)). Judge Borrello also explained that Plaintiffs could initiate "the expedited [forfeiture] hearing to which [they are] entitled under state law," avoiding "the more cumbersome and expensive process" for a civil cause of action for claim and delivery. *Id.* at PageID.1117.

Then in a January 2021 order granting summary judgment for Defendant, Judge Borrello (1) denied Plaintiffs' claim-and-delivery action on the merits, (2) briefly elaborated on the

statutory forfeiture proceedings, (3) again suggested that Plaintiffs file a motion to initiate forfeiture proceedings in the district court of Heinrich's criminal case because "a claim and delivery action in the Circuit Court is an improper mechanism to recover th[e] firearm[s]," and then (4) dismissed the case "without prejudice to Plaintiffs' ability to bring their claims in the appropriate court." ECF No. 11-15 at PageID.1135–44.

### C.

Plaintiff did not challenge the forfeiture of the firearms. Instead, they sought the same "claim and delivery" relief from a different court: the district court of Heinrich's criminal conviction. *See Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-0781-GZ (Mich. 70th Dist. Ct. Saginaw Cnty. filed Feb. 24, 2021). That is, they went to the right court but filed the wrong claim.

Judge Terry L. Clark dismissed the case in August 2021, as follows:

1. Plaintiffs' Motion for Summary Disposition is denied.
2. Defendant's Motion for Summary Judgment is granted on the grounds that the Saginaw County Sherriff's Office is not a legal entity subject to suit and Plaintiffs' Claim and Delivery action is barred by governmental immunity.

ECF No. 2-10 at PageID.91.

Plaintiffs again chose not to initiate forfeiture proceedings. Instead, they appealed the district court's order to the Tenth Circuit Court of Saginaw County. *See Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-045333-AV (Mich. 10th Cir. Ct. Saginaw Cnty. filed Sept. 3, 2021). Although the public docket is not available in that case, the state-court clerk's office responded that a "no-notice" oral argument is scheduled for December 9, 2022.[2] Thus, Plaintiff's

---

[2] Although it is not altogether clear what a "no-notice hearing" is, it probably is an ex-parte hearing. *See Bennett v. Davidson*, No. 250694, 2005 WL 1123603, at *4 (Mich. Ct. App. May 12, 2005) (per curiam) ("A hearing that is ex parte is defined by Black's Law Dictionary as: 'Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested.'" (citation omitted)).

claim-and-delivery action, dismissed by Judge Borrello and Judge Clark, is once again before Judge Borrello.

Meanwhile, Judge Clark ordered that the 14 firearms shall "not be disposed of until appeal is resolved." *Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-0781-GZ (Mich. 70th Dist. Ct. Saginaw Cnty. Aug. 31, 2021). That order is still in effect.[3]

As explained earlier, with their state-court appeal pending, Plaintiffs filed a third claim-and-delivery action here, which was stayed, which they appealed, which was remanded.

**D.**

Back here again, the parties have filed cross-motions for summary judgment on Plaintiffs' claim-and-delivery action.[4] ECF Nos. 2; 13; 20. Both motions involve several issues of state law—from ambiguous criteria concerning ownership of the firearms to confusion surrounding Michigan's forfeiture statutes.

The parties principally dispute whether the Saginaw County Sheriff's Office lawfully possesses the 14 firearms. Defendant's primary, reasonable concern is that Plaintiffs are merely claiming ownership to retrieve the firearms for Heinrich, who may not legally possess them. *See* ECF No. 20 at PageID.1555–56. Plaintiffs inconsistently acknowledge that they "[s]tored" the 14 firearms at Heinrich's house yet deny "they were []ever given to, put in possession of, or provided to Mr. Heinrich in any way." ECF No. 1 at PageID.3; *accord* ECF Nos. 2-6; 2-7. Plaintiffs are "unable to document ownership of these firearms" but allege that some are "family heirlooms."

---

[3] Although the state-court order, enjoining destruction of the property at issue here, raises questions about this Court's jurisdiction, they will not be addressed yet because the case will be stayed.

[4] Plaintiffs have also filed a motion for leave to amend the complaint to "account for" intervening precedent "and to add a Second Amendment claim for damages and other relief under [§] 1983, and various claims under the Michigan Constitution." ECF No. 29 at PageID.1692. But that motion will not be addressed yet because the case will be stayed.

ECF No. 2-6 at PageID.63, 64, 65. Adding insult to injury, Heinrich has lived in the house since at least June 4, 2014, ECF No. 10-4 at PageID.288, while his mother held partial title, *see* ECF No. 11-7 at PageID.1004–06.[5] But Plaintiffs dispute that issue. *See* ECF No. 2 at PageID.35 n.1 ("Plaintiff Novak is the owner of the property and has long allowed Mr. Heinrich and his girlfriend to stay [there]." (citing ECF No. 2-6 at PageID.63)). Yet Plaintiffs maintain that they are two innocent owners who just want their family's guns back. *See* Dennis P. Chapman, *Firearms Chimera*, 8 BELMONT L. REV. 191, 222–23 (2020) (discussing how "[K]afkaesque forfeiture regimes" could be used by municipalities "to harass law abiding gun owners and relieve them of their firearms, if only temporarily").

    The parties also disagree over which cause of action applies to their dispute. Defendant maintains not only that Michigan law does not require the Sheriff's Office to initiate forfeiture

---

[5] Title to the house has changed hands quite a bit over the years, though mostly within Heinrich's maternal family. According to Saginaw County's records for parcel 19-11-1-21-4004-000, Heinrich's maternal grandparents, Ernest Novak and Marvel Novak née Doehring, transferred an unspecified interest in the land to their three children: Gerald Novak, Shirley Bruse née Novak, and Heinrich's mother Joann Heinrich née Novak. *See* ECF No. 11-7 at PageID.1004–06. Heinrich's mother passed away on March 10, 2013. *Joann L. Heinrich*, W.L. CASE & CO. (Mar. 2013), https://casefuneralhome.secure.tributecenteronline.com/obituaries/Joann-L-Heinrich?obId=1881490 [https://perma.cc/7E6A-JU39]. Her interest posthumously transferred to Heinrich's father, Herman, who, along with Shirley, transferred his interest to Gerald Novak. *See* ECF No. 11-7 at PageID.1004–06. Confusingly, one month before Benjamin Heinrich was arrested, Herman's estate and Shirley again transferred their interest to Gerald Novak on September 29, 2017, *see id.*, which was approximately two years after Herman passed away, *see Herman William Heinrich IV. (Skip)*, W.L. CASE & CO. (Sept. 2015), https://www.casefuneralhome.com/obituaries/herman-william-heinrich-iv-skip [https://perma.cc/RLE3-5TAY]. In any case, Benjamin Heinrich lived in the house while his mother held at least partial title. "Courts may take 'judicial notice of an adjudicative fact' under Federal Rule of Evidence 201(b)(2)." Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 13 (2022). All the information in this footnote is verifiable in public records, so this Court is taking judicial notice of it. *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 501 (6th Cir. 2017); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

proceedings, but also that Plaintiffs could do so but have chosen not to do so. Neither party has. Because Defendant has not initiated forfeiture proceedings, Plaintiffs believe the answer is "claim and delivery." Both actions, however, would require a determination of who owns the firearms. Forfeiture would also require a determination of whether the firearms are subject to forfeiture.

To understand the nuances of these issues, a brief survey of forfeiture and claim and delivery is warranted.

## E.

The concept of forfeiture, punishing profit and property of criminal conduct, is Biblical. *See Exodus* 21:28 (Douay-Confraternity) ("If an ox gore a man or woman, and they die, he shall be stoned: and his flesh shall not be eaten, but the owner of the ox shall be quit.").

But modern forfeiture evolved from medieval England, where death-causing property, called "deodands," were forfeited to the Crown, which would donate the value to charity. Robert Lieske, *Civil Forfeiture Law*, 21 WM. MITCHELL L. REV. 265, 272–75 (1995). Charity lost to profit, however, and the Crown started keeping the deodands. *Id.* at 274. This newfound revenue source eventually spread to piracy and smuggling too. *Id.* at 275–77 (discussing the Navigation Act of 1660).

As an outgrowth of English law, the United States similarly authorized civil forfeiture to sanction ships used in customs violations. 21 U.S.C. § 881(a)(6) (1789). After the Civil War, forfeiture expanded to tax-revenue violations. Lawrence A. Kasten, *Extending Constitutional Protection to Civil Forfeitures That Exceed Rough Remedial Compensation*, 60 GEO. WASH. L. REV. 194, 201 (1991). Until the First World War, when the Constitution was amended to authorize an income tax, the "main purpose" of forfeiture was "[p]rotection of the federal fisc." 1 DAVID B. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES ¶ 1.01 (2000). Congress inevitably

expanded it to—"among other things—arms exportation, slave trading, violating U.S. neutrality, alcohol distilling, sugar and snuff refining, and trading with native peoples." Kevin Arlyck, *The Founders' Forfeiture*, 119 COLUM. L. REV. 1449, 1465 (2019) (citations and footnotes omitted). But "it was not until the 'war on drugs' in the 1980s that modern civil forfeiture use became widespread." Rachel L. Stuteville, Comment, *Reverse Robin Hood*, 46 TEX. TECH L. REV. 1169, 1179 (2014).

Civil forfeiture has become controversial. As an *in rem* proceeding focusing on the innocence of property, the owner's innocence has little to no effect on the outcome. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684–86 (collecting cases). Advocates argue "[a]sset forfeiture is one of law enforcement's most effective tools to reduce crime." *See, e.g.*, JEFFERSON B. SESSIONS III, OFF. OF THE ATT'Y GEN., ORD. NO. 3946-2017, FEDERAL FORFEITURE OF PROPERTY SEIZED BY STATE AND LOCAL LAW ENFORCEMENT AGENCIES (2017), https://www.justice.gov/opa/press-release/file/982611/download [https://perma.cc/P3GE-KUSB]. Critics, however, "contend modern civil forfeiture is out of control." Arlyck, *supra*, 1456; Marc S. Roy, *United States Federal Forfeiture Law*, 69 MISS. L.J. 373, 416 (1999) (fearing "zealot" law-enforcement officials who are too "immersed in their pursuit of the rewards offered by forfeiture").

And civil forfeiture has become so complex that it makes inexperienced attorneys "feel like they are in an Alice-in-Wonderland world." 1 DAVID B. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES ¶ 1.03 (2000). Yet all 50 states use some type of forfeiture remedy. *See generally* MARIAN R. WILLIAMS ET AL., INST. FOR JUST., POLICING FOR PROFIT (2010), https://ij.org/wp-content/uploads/2015/03/assetforfeituretoemail.pdf [https://perma.cc/Q6S8-ZSWX] (grading the civil-forfeiture laws of all 50 states).

Michigan civil forfeiture is no exception. At its inception, Michigan forfeiture did not require criminal proceedings. *See* Meghan Berkery, Note, *Rethinking the Future of Civil Asset Forfeiture in Michigan*, 96 U. DET. MERCY L. REV. 329, 360–61 (2019). "[F]or failing to adequately protect citizens," those laws were "widely criticized." Kelsey Kanthack, Post, *Michigan's Civil Asset Forfeiture Laws Are Changing, But at What Cost?*, MICH. ST. L. REV. F. (Jan. 30, 2020), https://www.michiganstatelawreview.org/forum-2/2020/1/30/michigans-civil-asset-forfeiture-laws-are-changing-but-at-what-cost [https://perma.cc/9YCY-JRTM]. In 2010 for example, Michigan was one of the five "lowest-graded states overall" based on "both poor laws and aggressive use of equitable sharing." MARIAN R. WILLIAMS ET AL., INST. FOR JUST., POLI¢ING FOR PROFIT 8 (2010), https://ij.org/wp-content/uploads/2015/03/assetforfeituretoemail.pdf [https://perma.cc/Q6S8-ZSWX] (grading the civil-forfeiture laws of all 50 states). Despite such heavily criticized law-enforcement purposes, Michigan forfeiture has "allow[ed many] defendants to obtain favorable sentences in return for favorable forfeiture agreements." Kevin P. Rauseo, Comment, *Criminal Procedure*, 30 SUFFOLK U. L. REV. 1245, 1248 (1997).

This case orbits Michigan's Omnibus Forfeiture Act (OFA), passed in 1961.[6] MICH. COMP. LAWS §§ 600.4701–.4710 (2015). Specifically, it revolves around whether the OFA's prohibition of "any other action to recover personal property" that is "seized under [Chapter 600]" bars Plaintiffs' claim-and-delivery action for possession of the 14 firearms seized from Heinrich. *See* MICH. COMP. LAWS § 600.4703(5). Plaintiffs would have "claim and delivery" eclipse forfeiture.

---

[6] Michigan also has forfeiture statutes for criminal conduct involving controlled substances, MICH. COMP. LAWS §§ 333.7521–.7533 (2016), identity theft, MICH. COMP. LAWS §§ 445.79–.79d (2016), nuisance abatement, MICH. COMP. LAWS §§ 600.3801–.3841 (2016), and firearms, MICH. COMP. LAWS §§ 750.239, .239a (2010).

**F.**

Unlike forfeiture's focus on the *liability* of real and personal property, the civil cause of action for "claim and delivery" is all about the *possession* of personal property.

Although born as "detinue" in England during the reign of Henry II, for the longest time "claim and delivery" was called *Replevin*:

> If the beginning of love
> Is *loss*, possessing it
> In places where you know
> It can be seen, then
> The reason for love is
> *Retrieval*, arranging it
> To fit the space where
> It always might have been.

Douglas Crase, *Three Poems: Replevin*, POETRY NW., Spring 1977, at 17, 17 (emphases added); 3 WILLIAM BLACKSTONE, COMMENTARIES *144, *145–46. This loss–recovery legal remedy was created to deter self-help recovery of chattels, though mostly used to permit tenants to repossess their goods from landlords after being evicted for overdue rent, which often undervalued the seized goods. *See Sears v. Cottrell*, 5 Mich. 251, 268 (1858). A person from whom a chattel was taken could invoke replevin to repossess it until the court resolved the superior right to possession.

Replevin grew into a bulwark against any wrongful possession of personal property. While a minority of states permitted quiet-title actions[7] to resolve *ownership* issues involving both real

---

[7] "Quiet title actions are in rem proceedings that clarify rights in property." Henry H. Perritt, Jr., *Cut in Tiny Pieces*, 14 VAND. J. ENT. & TECH. L. 1, 46 (2011) (comparing states' quiet-title laws). Michigan limits quiet-title actions to real property, which might contain personal property. *See, e.g.*, *Fairways Dev. of N. Mich., Inc. v. SPL of Bloomfield, LLC*, No. 286680, 2009 WL 3789986, at *1 (Mich. Ct. App. Nov. 12, 2009) (per curiam) (trying to quiet title to personal property left on a golf course); *see also McKay v. Palmer*, 427 N.W.2d 620, 622 (Mich. Ct. App. 1988) (per curiam) ("A suit to quiet title or remove a cloud on a title is one in equity and not at law." (first citing MICH. COMP. LAWS § 600.2932; and then citing *Crawford v. Hamrick*, 42 N.W.2d 751 (Mich. 1950))); MICH. COMP. LAWS § 124.759 (2004).

and personal property, *see* John T. Soma et al., *The Use of Quiet Title and Declaratory Judgment Proceedings in Computer Software Ownership Disputes*, 71 DENV. U. L. REV. 543, 567–68 (1994), Michigan made replevin the exclusive cause of action to recover *possession* of personal property,[8] *Corbitt v. Brong*, 6 N.W. 213 (Mich. 1880) (per curiam). However, "replevin was declared unconstitutional in 1972 and replaced with claim and delivery." Byron D. Cooper, *The Bar Exam and Law Schools*, 80 MICH. BAR J., at 74, 74 (2001) (citing Mich. Ct. R. 3.105). Both quiet title and claim and delivery are distinguishable from conversion, which "consists solely of a right to *use* a thing." Sandra B. Zellmer & Jessica Harder, *Unbundling Property in Water*, 59 ALA. L. REV. 679, 715 (2008) (emphasis added).

The same 1961 Michigan statute that enacted the OFA also codified "claim and delivery."[9] "In most cases, the basis of the action is a security agreement." Daniel M. Morley, *The Claim and Delivery Action*, 78 MICH. BAR J., at 674, 674 (1999). "[F]irms [tend to] use claim and delivery process only as a last resort after having failed to collect the debt by other means." *Blair v. Pitchess*, 486 P.2d 1242, 1248 (Cal. 1971) (en banc). Supplemented by a 1985 court rule, Michigan claim and delivery permits a holder of legal title to recover "possession of [*any*] goods or chattels which have been unlawfully taken or unlawfully detained." Mich. Ct. R. 3.105; MICH. COMP. LAWS § 600.2920(1) (2004); *see also Sparling Plastic Indus., Inc. v. Sparling*, 583 N.W.2d 232, 236–37 (Mich. Ct. App. 1998) (holding that claim and delivery "applies only to tangible property").

In sum, claim and delivery is a possessory action not intended to resolve legal title. *Pearl v. Garlock*, 28 N.W. 155, 155 (Mich. 1886). Claim-and-delivery judgments only resolve the right

---

[8] Notably, Michigan does not recognize any of the common-law of lost property. *See generally Willsmore v. Oceola Twp.*,  308 N.W.2d 796, 803 (Mich. Ct. App. 1981).
[9] In 1962, Michigan extended claim and delivery as a remedy in contract disputes. *See* MICH. COMP. LAWS § 440.2716 (2001). But that is not at issue here.

of possession. *Kaufman v. Nystrom*, 67 N.W.2d 240, 243 (Mich. 1954) (en banc); *see also Simmons v. City of Southfield*, No. 19-11726, 2020 WL 1868774, at *5 (E.D. Mich. Jan. 27, 2020) (stating that claim-and-delivery "motions are more accurately motions for possession pending final judgment"), *R&R adopted*, No. 19-11726, 2020 WL 1866096 (E.D. Mich. Apr. 14, 2020). Simply put, legal title is an element of claim and delivery, not the goal. *See Colby v. Portman*, 72 N.W. 1098, 1099 (Mich. 1897); *cf. Dawkins v. Edwards*, 134 N.W.2d 756, 763 (Mich. 1965) ("The right to maintain replevin has been denied where the [plaintiff] has no legal title to the property sought, or fails to show any right to immediate possession thereof.'"). In sum, claim and delivery is to possession, as conversion is to use, as quiet title is to ownership, as forfeiture is to the criminal liability of property.

Because Plaintiffs have no proof of title to the firearms lawfully seized incident to the arrest of another person, their recovery attempt seems more apt for forfeiture than for claim and delivery.

## II.

As explained hereafter, resolving ambiguous Michigan law could resolve all of Plaintiffs' constitutional claims. The ambiguity is the interaction between forfeiture (a complex regulatory system to resolve whether property was involved in a crime) and claim and delivery (a civil cause of action to recover possession of property). Similarly, all of Plaintiffs' claims might be avoided if either party would file a motion to initiate forfeiture proceedings in the state district court of Heinrich's criminal conviction. For these reasons, this Court will stay the case under *Pullman* abstention, *Burford* abstention, and its inherent authority to manage its docket. Consequently, the parties will be directed to certify questions to the Michigan Supreme Court and to show cause for

why they have not initiated forfeiture proceedings in the Seventieth District Court of Saginaw County.[10]

## A.

*Pullman* abstention is warranted when a constitutional issue would be avoided by resolving an "unclear" state-law claim. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–501 (1941); *accord Baggett v. Bullitt*, 377 U.S. 360, 376–78 (1964) (explaining that, in "the bulk of abstention cases," the "eliminat[ion of] the constitutional issue and terminat[ion of] the litigation. . . . turn upon a choice between one or several alternative meanings of a state statute"); *Traughber v. Beauchane*, 760 F.2d 673, 682 (6th Cir. 1985) ("*Pullman* abstention is applicable [if] state interpretation of an unclear law would remove the federal issue by making unnecessary a constitutional decision.").

District courts may abstain *sua sponte*. *Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 966 (6th Cir. 1991) (citations omitted). Before invoking *Pullman* abstention, however, "district courts should engage in a thorough analysis of the state-law issue." *Jones v. Coleman*, 848 F.3d 744, 753 (6th Cir. 2017). To that end, the "district court must ask whether the state statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *Id.* at 752 (quoting *Harman v. Forssenius*, 380 U.S. 528, 535 (1965)). As a threshold matter, the statutory interpretations at issue involve only 13 firearms. *See*

---

[10] If a state forfeiture proceeding were pending in the state court, then this case might be ripe for *Younger* abstention as a "state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases." *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *see, e.g.*, *Ingram v. Cnty. of Wayne*, No. 20-10288, 2021 WL 4479398, at *6 (E.D. Mich. Sept. 30, 2021) ("The Court therefore finds that Wilson similarly has an adequate opportunity to raise her constitutional claims in state court and *Younger* abstention is appropriate in regard to the on-going proceedings against her Saturn Ion."), *recons. denied*, No. 20-CV-10288, 2022 WL 2079866 (E.D. Mich. June 9, 2022).

discussion *supra* Section I.A. There is no question that the New England Firearms Pardner Model .410 GA shotgun (SN: NB218049) that Heinrich used to violate § 750.81(2) has been "forfeited to the state." *See* Mich. Comp. Laws § 750.239(1) (2010).[11]

## 1.

The key issue here is whether Michigan's forfeiture statute precludes Plaintiffs' claim-and-delivery action. If not, then any purportedly innocent owner of property lawfully seized from another could bring a federal § 1983 action that would obviate Michigan's entire forfeiture system. Taken to its logical conclusion for context, if the police lawfully seize a criminal's extra guns, then any friend or family member could bring a federal § 1983 action for claim and delivery of the guns. But what if the third party is merely assisting the defendant to recover the guns? State courts are best suited to address such matters of property ownership—creatures of state law. And forfeiture seems more apt under the circumstances. These issues turn on an interpretation of Chapter 600, which provides the comprehensive administrative system for omnibus forfeiture in Michigan: the OFA. *See* Mich. Comp. Laws §§ 600.4701–.4710 (2015).

Although the OFA permits precharge property seizures and forfeiture proceedings, *see* Mich. Comp. Laws §§ 600.4703, .4704(1)(a) (2015), an OFA judgment requires a criminal conviction, *Ingram v. Cnty. of Wayne*, No. 20-CV-10288, 2022 WL 2079866, at \*5 (E.D. Mich. June 9, 2022) (citing Mich. Comp. Laws § 600.4707 (2015)), which includes guilty pleas, *see In re Hoffman*, 40 N.W.2d 187, 188 (Mich. 1949) (en banc). Personal property that is "subject to

---

[11] Section 750.239(1) provides that:
> Except as provided in [§ 750.239(2)] and subject to [§ 750.239a], all pistols, weapons, or devices carried, possessed, or used contrary to [Chapter 750] are forfeited to the state and shall be turned over to the department of state police for disposition as determined appropriate by the director of the department of state police or his or her designated representative.

Mich. Comp. Laws § 750.239(1) (2010).

forfeiture" includes a crime's (1) proceeds, (2) substituted proceeds, and (3) instrumentalities.[12]

MICH. COMP. LAWS § 600.4702(1)(a) (2015).

The OFA does not require "the state or local unit of government seeking forfeiture of the

property" to initiate forfeiture proceedings if the property has a value "less than $100,000.00."[13]

MICH. COMP. LAWS § 600.4707(1) (2015).[14] It only requires "notice" of the seizure of the property

and the intent to forfeit and dispose of the property" to certain people. *See id.*; MICH. COMP. LAWS

§ 600.4704(1) (2015).[15] "To trigger a hearing, it is incumbent upon the defendant or other

interested party to file a claim with the prosecutor or police agency." Thomas A. Ginster, *The*

*Victim's Rights—Omnibus Forfeiture Law*, 73 MICH. BAR J. 1304, 1306 (1994); *see also* MICH.

---

[12] The OFA also permits forfeiture of real property. *See* MICH. COMP. LAWS § 600.4702(1)(b) (2015). But that is not at issue here.

[13] By contrast, forfeitable personal property exceeding $100,000 and real property requires the government to "institute a civil action for forfeiture within 28 days" of the first criminal conviction. MICH. COMP. LAWS § 600.4707(5) (2015).

[14] Section 600.4707(1) provides that:

> If property subject to forfeiture under this chapter has a total value of less than $100,000.00, within 28 days after the conviction of a person of a crime, the state or local unit of government seeking forfeiture of the property shall give notice of the seizure of the property or, if a lien has been filed, the filing of the lien, and the intent to begin proceedings to forfeit and dispose of the property according to this chapter to each of the persons to whom notice is required to be given under [§ 600.4704]. Notice shall be given in the same manner as required under [§ 600.4704].

MICH. COMP. LAWS § 600.4707(1) (2015).

[15] In relevant part, § 600.4704 requires notice as follows:

> (1) Within 28 days after personal property is seized . . . under [§ 600.4703], the seizing agency . . . shall give notice of the seizure of the property and the intent to forfeit and dispose of the property according to [Chapter 600] to each of the following persons:
>> (a) If charges have been filed against a person for a crime, the person charged.
>> (b) Each person with a known ownership interest in the property.
>> . . . .
>> (f) Each person with a known security interest in the property.
>> (g) Each victim of the crime.

MICH. COMP. LAWS § 400.4704(1) (2015). It is unknown whether the Saginaw County Sheriff's Office sent notice to Henrich or his victim, "H." MICH. COMP. LAWS § 600.4704(1)(a), (g) (2015).

COMP. LAWS § 600.4707(2) (2015) (permitting interested parties to initiate forfeiture proceedings). Innocent third parties may also contest forfeiture by filing a motion in the criminal court based on (1) illegal seizure, (2) lack of forfeitability, or (3) "that the person has an ownership or security interest in the property and did not have prior knowledge of, or consent to the commission of, the crime." MICH. COMP. LAWS § 600.4705(1) (2015).[16] For such a motion, the court must hold a hearing within 28 days. *Id.* If no such motion is filed, then the property is forfeited to the seizing agency.[17] *See* MICH. COMP. LAWS § 600.4707(3) (2015).

However, the OFA problematically provides that:

> Personal property seized under [Chapter 600] is not subject to any other action to recover personal property, but is considered to be in the custody of the seizing agency subject only to [§ 600.4703(4)] and [§§ 600.4705–.4707], or to an order and judgment of the court having jurisdiction over the forfeiture proceedings.

MICH. COMP. LAWS § 600.4073(5) (2015).

No doubt, claim and delivery is an "action . . . to recover possession" of personal property. MICH. COMP. LAWS § 600.2920(1); Mich. Ct. R. 3.105; discussion *supra* Section I.F. "A claim and delivery action is governed by the rules applicable to other civil actions . . . ." Mich. Ct. R. 3.105(B). And the OFA is a "civil action." MICH. COMP. LAWS § 600.4707(4), (5) (2015).

Yet it is less than clear whether the firearms were "seized under [Chapter 600]." *See* MICH. COMP. LAWS § 4073(5) (2015). Personal property may be "seized" under the OFA in two circumstances. First is by court order after "a showing of probable cause that the property is subject

---

[16] The OFA also permits "a transferee under [§ 600.4703(7)]" to file a motion for return of seized property "on the grounds that . . . the person has an ownership or security interest in the property and . . . acquired an ownership or security interest by a transfer that is not void under [§ 600.4703(7)]." MICH. COMP. LAWS § 600.4705(1) (2015). But that is not at issue here.

[17] The closest analogue to claim and delivery in the federal context is Federal Rule of Criminal Procedure 41(g). Timothy J. Ford, Note, *Due Process for Cash Civil Forfeitures in Structuring Cases*, 114 MICH. L. REV. 455, 464–65 (2015).

to forfeiture." MICH. COMP. LAWS § 600.4703(1) (2015). That provision is inapplicable here, as there has been no probable-cause hearing.

"Personal property subject to forfeiture . . . may be seized *without process*" in six "circumstances." MICH. COMP. LAWS § 600.4703(2)(a)–(f) (2015) (emphasis added).[18] Confusingly, the first circumstance permits "[p]ersonal property subject to forfeiture" to "be seized without process" "incident to a lawful arrest" if it is subject to forfeiture. *Compare* MICH. COMP. LAWS § 600.4703(2)(a) (2015), *with* MICH. COMP. LAWS § 600.4702(1)(a) (2015). That language is obviously circular. Thus, the parties reasonably disagree over whether "subject to forfeiture" is a prerequisite for all six circumstances, none of them, or only the first one. That is, being "subject to forfeiture" might be a necessary, a sufficient, or merely an optional condition of seizing personal property without process. This issue is important because Defendant argues the firearms were seized incident to Heinrich's arrest, MICH. COMP. LAWS § 600.4703(2)(a) (2015), and as directly or indirectly dangerous to health or safety, MICH. COMP. LAWS § 600.4703(2)(d) (2015).

Even if personal property must be "subject to forfeiture" to be seized without process,  the OFA appears to place the burden on third parties to "move the court . . . to return the property . . .

---

[18] Section 600.4703(2) provides that "[p]ersonal property subject to forfeiture under this chapter may be seized without process under any of the following circumstances":

(a) The property is the proceeds of a crime, the substituted proceeds of a crime, or an instrumentality of a crime and the seizure is incident to a lawful arrest.

(b) The seizure is pursuant to a valid search warrant.

(c) The seizure is pursuant to an inspection under a valid administrative inspection warrant.

(d) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety.

(e) Exigent circumstances exist that preclude the obtaining of a court order, and there is probable cause to believe that the property is subject to forfeiture under this chapter.

(f) The property is the subject of a prior judgment in favor of this state in a forfeiture proceeding.

MICH. COMP. LAWS § 600.4703(2)(a)–(f) (2015).

- 19 -

on the grounds that . . . [it] is not subject to forfeiture." MICH. COMP. LAWS § 600.4705(1) (2015). There, the seizing agency must establish "that the property is subject to forfeiture" and "that the property was properly seized." MICH. COMP. LAWS § 600.4705(2)(a), (b) (2015).

Simply put, the structure of the OFA apparently *prohibits* claim-and-delivery actions before a court with jurisdiction determines whether the property is subject to forfeiture and was properly seized. But a careful reading of § 600.4703(5)'s text *permits* claim-and-delivery actions before those determinations are made. As explained though, the seizing agency is not always required to initiate forfeiture proceedings. *See* MICH. COMP. LAWS § 600.4707(1) (2015).

If law enforcement or prosecutors need not initiate forfeiture proceedings under the OFA, then must Plaintiffs do so before filing a claim-and-delivery action to retrieve the seized property? Does the chicken come before the egg? And which is which? This is the crux of the case.

## 2.

Although it is not altogether clear why Plaintiffs are unwilling to initiate forfeiture proceedings, it might be due to different burdens of proving ownership. Under that lens, Plaintiffs seem to believe that proving that they own the firearms would be easier in a civil claim-and-delivery action than in forfeiture proceedings. But that proposition is doubtful at best.

In forfeiture, Plaintiffs might have to prove their title to the firearms, as they were seized from Heinrich's possession. *Hollins v. City of Detroit Police Dep't*, 571 N.W.2d 729, 732 (Mich. Ct. App. 1997) ("[T]he government properly could have presumed that the family member in actual possession of the cash was its true owner. The burden would then have been on another family member to produce evidence to the contrary." (citing *In re Forfeiture of $19,250*, 530 N.W.2d 759, 762–63 (Mich. Ct. App. 1995))); *Barnes v. City of Detroit*, 150 N.W.2d 740, 743 (Mich. 1967) (en banc) ("[P]ossession alone has frequently been held, in reference to personal

- 20 -

property, as prima facie evidence of ownership."). As Plaintiffs acknowledge, however, "there are no existing ownership papers" for any of the 14 firearms. ECF Nos. 2 at PageID.37; 2-6 at PageID.64 (affidavit of Gerald Novak) ("I would provide it, if I had such paperwork, as it would help my lawsuit."); *accord* ECF No. 2-7 at PageID.65 (affidavit of Adam Wenzel). But the forfeiture statutes place burdens of proof on Defendant as well. *See* MICH. COMP. LAWS § 600.4707(6) (2015) (requiring government to prove that property is subject to forfeiture and that third-party claimant is not an innocent owner).

In a claim-and-delivery action, however, Plaintiffs believe Defendant must "establish a lawful reason to deny the return of the [firearms]." ECF No. 13 at PageID.1355 (quoting *People v. Washington*, 351 N.W.2d 577, 580 (Mich. Ct. App. 1984)). Although this Court will not address the myriad of reasons why *Washington* is inapt here, the most important are that (1) *Washington* involved the controlled-substances forfeiture statutes, not the OFA; (2) ownership was being claimed by the criminal defendant from whom the property was seized, not a third party; and (3) the police would not return the property after the criminal defendant prevailed in forfeiture. In this way, *Washington* supports Defendant's position that "claim and delivery" is not available to Plaintiffs unless they at least initiate forfeiture proceedings. Other cases also affirm that view. *See, e.g.*, *McLeod v. City of Melvindale*, No. 04-73202, 2005 WL 2313932, at *2–3 (E.D. Mich. Sept. 21, 2005) (discussing criminal defendant who won judgment for claim and delivery of seized property in state criminal court where forfeiture proceedings were pending).

In reality though, Plaintiffs must prove their title to the firearms in claim and delivery too. Because Plaintiffs did not possess the firearms when they were seized, Plaintiffs could only prevail in a claim-and-delivery action by proving title and thus ownership. *F.D. Barton & Co. v. Trumbull*,

198 N.W. 186, 187 (Mich. 1924). And if Plaintiffs succeed, then Defendant could still prevail by proving Heinrich has title. *Sanford v. Millikin*, 107 N.W. 884, 884 (Mich. 1906) (citations omitted).

In sum, both forfeiture and claim and delivery would require a factual determination as to whether Plaintiffs or Heinrich own the firearms. If Plaintiffs do not own the firearms, then they have no related claims under the Second, Fourth, Fifth, or Fourteenth Amendments.

As explained, however, an antecedent issue is whether the factual determination of ownership may be resolved in claim and delivery before forfeiture proceedings have begun. *See* discussion *supra* Section II.A.1. Is it a prerequisite to claim and delivery that the state district court with jurisdiction over Heinrich's criminal proceedings determine in a forfeiture proceeding either that the firearms are not subject to forfeiture or that Plaintiffs are entitled to them? Or do forfeiture proceedings need only to have begun? Or neither?

If the Michigan Supreme Court interprets the OFA as requiring Plaintiffs to initiate forfeiture proceedings first, and then Plaintiffs lose, then all their constitutional claims would be avoided. The same is true even if Defendant must initiate forfeiture proceeding. Put another way, if Plaintiffs' ability or failure to initiate forfeiture forecloses claim and delivery, then "there is an end of the litigation; the constitutional issue[s] do[] not arise." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941).

And no case from the Michigan Supreme Court or the Michigan Court of Appeals has directly addressed the relevant statutory language. Granted, for more than 44 years, Michigan courts have recognized that similar statutory "language is clear and unambiguous" in that "the forfeiture statute preclude[s a] plaintiff's claim and delivery action." *Derrick v. City of Detroit*, 425 N.W.2d 154, 155 (Mich. Ct. App. 1988) (per curiam) (quoting MICH. COMP. LAWS § 333.7523(2) (effective Sep. 30, 1985)); *accord In re Forfeiture of 1987 Mercury*, 652 N.W.2d 675,

678–79 (Mich. Ct. App. 2002). But those cases were interpreting the controlled-substances forfeiture statutes—not the OFA. *Compare* MICH. COMP. LAWS §§ 333.7501–333.7545 (controlled-substances forfeiture), *with* MICH. COMP. LAWS §§ 600.4701–4710 (omnibus forfeiture).

Because the relevant OFA provisions remain ambiguous, and at least one interpretation of them would moot all of Plaintiffs' constitutional issues, *Pullman* abstention is warranted.

## B.

### 1.

Abstention is also required if federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 333–34 (1943). *Burford* abstention applies only if a federal court's interpretation of state law is likely to "interfere with the proceedings or orders of state administrative agencies." *New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350, 361 (1989). As the Sixth Circuit has framed it:

> The *Burford* abstention should not be applied unless: (1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)). To that end, the district court must "balance the state and federal interests at stake," which "only rarely favors abstention." *Quackenbush v. Allstate Ins.*, 517 U.S. 706, 728 (1996).

*Burford* established a discretionary rule of federal abstention that reflects "principles of federalism and comity." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d

554, 562 (6th Cir. 2010). The *Burford* plaintiffs challenged the reasonableness of the Texas Railroad Commission's decision to grant an oil-drilling permit. *Burford*, 319 U.S. at 317. The only question was whether the Commission properly applied the State's oil and gas regulations. *See NOPSI*, 491 U.S. at 360 (describing the facts of *Burford*). Despite the question's "minimal federal importance," *id.*, the Supreme Court held that "a sound respect for the independence of state action" and the need to avoid disrupting Texas's "unified method for the formation of policy" required the district court to "stay its hand." *Burford*, 319 U.S. at 333–34.

**2.**

It is well established that "a 'strong federal interest' in exercising [federal] jurisdiction." *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 865 (6th Cir. 2021) (quoting *Quackenbush*, 517 U.S. at 728).

But substantive Michigan law is at stake here. *Id.* ("*Burford* abstention is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding *that state's* laws." (quoting *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991))).

And this Court is being asked to review state action: the Sherriff's choice not to initiate forfeiture proceedings after seizing private property. *See NOPSI*, 491 U.S. at 361; *see also Fragoso v. Lopez*, 991 F.2d 878, 883 (1st Cir. 1993) ("*Burford* abstention is implicated when the federal courts are asked to interfere with state processes by *reviewing* the proceedings or orders of state administrative agencies."). Although "courts applying *Burford* abstention must look to the scope and complexity of state regulatory proceedings," Christian J. Grostic, Note, *A Prudential Exercise*, 104 MICH. L. REV. 131, 143 (2005), the Sixth Circuit explicitly held that *Burford* abstention is not limited "to situations where state administrative agencies are involved." *Caudill v. Eubanks Farms,*

- 24 -

*Inc.*, 301 F.3d at 661–63 (collecting cases). Even so, administrative agencies effectuate Michigan's forfeiture system. *See* MICH. COMP. LAWS § 600.4707(5) (2015) (permitting forfeiture to be initiated by "the attorney general, or the prosecuting attorney or the city or township attorney for the local unit of government"); *supra* note 13 and accompanying text.

"[T]he key question," however, "is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Cleveland*, 621 F.3d at 562 (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009)). It could.

If this Court interprets the OFA to permit Plaintiffs to initiate claim and delivery before forfeiture, then as explained above, any person could seek property seized from someone else without going through Michigan's forfeiture proceedings by simply pleading a § 1983 action in federal court. *See* discussion *supra* Section II.A.1. Obviously, that regime would create a perverse incentive for state-convicted criminals to ask others to retrieve their seized property in federal court. That regime could also encourage lawyers to seek such cases for the attorney's fees that accompany the § 1983 claims, which could also lead to a complete erosion of Michigan's forfeiture scheme—and one that would cost Michiganders a lot more money.

And Michigan's forfeiture system is complex. *See generally* Dick Carpenter, Jennifer McDonald & Zachary Popovich, *The Complex Process of Civil Forfeiture*, CRIMRXIV, Feb. 2022 (explaining why state forfeiture systems, including Michigan's, are "far more complex and difficult to navigate than forfeiture proponents suggest"). As the late Judge Arthur Tarnow reasoned 11 months ago, even the probable-cause determinations in Michigan's omnibus forfeiture scheme are so "complex" that they lead to "a high risk of erroneous deprivation, especially for innocent owners who are not present at the time of seizure." *Ingram v. Cnty. of Wayne*, No. 20-10288, 2021 WL 4479398, at *15 (E.D. Mich. Sept. 30, 2021). Scholars, too, have acknowledged

"[t]he seriousness and complexity of the problems caused by forfeiting the property of innocent owners" under Michigan's forfeiture statutes. *See Civil Forfeiture—Innocent Owner Defense*, 110 HARV. L. REV. 135, 139 (1996) (discussing *Bennis v. Michigan*, 516 U.S. 442 (1996)). Seasoned prosecutors also find Michigan's forfeiture proceedings to be "difficult." *See* Thomas A. Ginster, *The Victim's Rights—Omnibus Forfeiture Law*, 73 MICH. BAR J.1304, 1308 (1994).

Even Chief Judge Jeffrey Sutton of the Sixth Circuit Court of Appeals called Michigan's forfeiture law "very strange to put [Plaintiffs] in the position of launching a forfeiture action which could end badly" and "doubly strange" if it does not permit Plaintiffs to do so. Oral Argument at 11:56–12:14, Novak v. Federspiel, 2022 WL 3046973 (6th Cir. Aug. 2, 2022) (No. 21-1722), https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/06-09-2022%20-%20Thursday/21-1722%20Gerald%20Novak%20v%20William%20Federspiel%20et%20al.mp3&name=21-1722%20Gerald%20Novak%20v%20William%20Federspiel%20et%20al. Perhaps the Michigan Supreme Court can clear up Judge Sutton's expressed concerns.

By all measures then, the wisest course is to ask the Michigan Supreme Court for clarity. This Court recognizes that the Michigan Supreme Court might not see a need for clarity on this question. But when it comes to property rights, federal courts are merely an understudy. *See MRP Props. Co. v. United States*, 583 F. Supp. 3d 981, 1017 (E.D. Mich. 2021) ("[P]rivate property rights are creatures of state law." (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972))). And Michigan provides a comprehensive administrative system for determining title to personal property that was seized from a convict: forfeiture. Federal review could disrupt Michigan's forfeiture policies.

For these reasons, this Court will stay the case under *Burford* abstention.

**C.**

Although abstention is warranted under *Pullman* and *Burford*, this Court must consider state certification, for which the case would be stayed. In the Sixth Circuit, if the "state has made certification available," as Michigan has done, then district courts should "carefully consider this option" before abstaining. *Jones v. Coleman*, 848 F.3d 744, 753–54 (6th Cir. 2017) ("The Supreme Court has stated a clear preference for certification over *Pullman* abstention . . . ." (citing *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 77 (1997))).

The Michigan Supreme Court permits federal courts to certify any "question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent." Mich. Ct. R. 7.308(A)(2)(a); *see also* Mich. Ct. R. 7.308(A)(2)(b) ("A certificate may be prepared by stipulation or at the certifying court's direction . . . ."). Yet, as noted, the Michigan Supreme Court may deny the request. Mich. Ct. R. 7.308(A)(5). And the outcome of certification is dubious at best.

But courts should always have an eye toward judicial efficiency. If Plaintiffs lose in the forfeiture proceeding or the state district court denies claim and delivery on the merits, then this case would become moot as to this Court and the state certification. Plaintiffs have a pending claim-and-delivery case in the state court, with an oral argument scheduled for December 9, 2022. *See* discussion *supra* Section I.C. So a stay seems appropriate.

This Court has the inherent authority to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *accord Betancourt v. Indian Hills Plaza LLC*, No. 1:21-CV-10436, 2022 WL 3234391, at *2 (E.D. Mich. July 18, 2022).

For this case, the Sixth Circuit flagged "the district court's inherent power to manage its docket and stay the resolution of discrete claims until after the state court's proceedings have come to a close." *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *3 (6th Cir. Aug. 2, 2022).

Generally, courts consider four factors when determining whether to stay a case pending another proceeding: (1) the potential of another case to have a dispositive effect on this case; (2) judicial economy; (3) public welfare; and (4) hardship or prejudice to the parties, given the stay's duration. *AES-Apex Emp. Servs., Inc. v. Rotondo*, No. 13-CV-14519-DT, 2015 WL 12990376, at *1 (E.D. Mich. July 24, 2015) (quoting *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004)).

The state case and the certified question could both moot this case. There is also a pressing need for delay, from which neither party nor public would suffer. *Ohio Env't Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). As Plaintiffs have repeatedly explained, they did not use but "merely stored" the firearms at Heinrich's house. And at risk here is Michigan's entire forfeiture regime as it relates to third parties. Therefore, this Court will stay the case until Plaintiffs prevail in forfeiture or claim and delivery in the state court, or until the Michigan Supreme Court answers the certified question if it wishes, or until further order of this Court.

So, though abstaining, this Court will stay the case as the Sixth Circuit recommended, maintain jurisdiction, direct the parties to certify questions to the Michigan Supreme Court, and direct the parties to show cause for why they have not initiated forfeiture proceedings in the Seventieth District Court of Saginaw County. Notably, forfeiture proceedings would likely moot certification. But, for whatever reason, the parties want to take the scenic route to resolution.

**D.**

Incidentally, Plaintiffs have filed duplicative motions for partial summary judgment or, alternatively, a preliminary injunction; the second one is redundant to the first. *Compare* ECF No. 2, *with* ECF No. 13. Plaintiff also filed an amended complaint. ECF No. 35. But Plaintiffs did not request leave to file the second motion, as required. E.D. Mich. LR 7.1(b) (requiring parties to "obtain leave of court to file more than one motion for summary judgment"). Nor have they been granted leave to file an amended complaint by this Court or the opposing party, as required. FED. R. CIV. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). This Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," FED. R. CIV. P. 12(f), including "a memorandum in violation of its local rules," *Newman v. Univ. of Dayton*, No. 3:17-CV-179, 2017 WL 4076517, at *3 (S.D. Ohio Sept. 14, 2017).

Yet, given the parties' greater clarity of the case after appeal, this Court will strike the first summary-judgment motion, not the second one. *Link v. Wabash R.R.*, 370 U.S. 626, 630–31 (1962) (holding that courts have "an 'inherent power,' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (collecting cases)). Consequently, the Motion for Partial Summary Judgment or Preliminary Injunction, ECF No. 2, will be stricken, and the Amended Complaint, ECF No. 35, will be stricken.

**III.**

Accordingly, it is **ORDERED** that the Motion for Partial Summary Judgment or Preliminary Injunction, ECF No. 2, and the Amended Complaint, ECF No. 35, are **STRICKEN**.

Further, it is **ORDERED** that, under *Pullman* abstention, *Burford* abstention, and this Court's inherent authority, this case is **STAYED** until (1) the disposition of *Novak v. Saginaw*

- 29 -

*County Sheriff's Office*, No. 21-045333-AV (Mich. Cir. Ct. Saginaw Cnty. filed Sept. 3, 2021); (2)

Plaintiffs prevail in forfeiture or claim and delivery; (3) the Michigan Supreme Court answers the

certified questions; or (4) further order of this Court. If the first, second, or third events occur, then

the parties are **DIRECTED** to notify this Court promptly.

Further, it is **ORDERED** that the parties are **DIRECTED** to file the following certified

questions in the Michigan Supreme Court **on or before December 27, 2022**:

> (1) Must the seizing agency initiate forfeiture proceedings for firearms seized from
> a person convicted of domestic violence if no third parties express an ownership
> interest within 28 days of the person's guilty plea?
>
> (2) Does the Omnibus Forfeiture Act preclude the claim-and-delivery action of a
> purportedly innocent owner of firearms that were seized from another person who
> was convicted of domestic violence?
>
> (3) If the seizing agency need not initiate forfeiture proceedings under the Omnibus
> Forfeiture Act, then must third parties do so before filing a claim-and-delivery
> action to retrieve the seized property?

Further, it is **ORDERED** that the parties are **DIRECTED** to show cause for why they have

not initiated forfeiture proceedings in the state district court of Heinrich's criminal conviction: the

Seventieth District Court of Saginaw County. The briefs must be at least 10 pages and must be

filed **on or before December 27, 2022**.

Dated: November 23, 2022          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge