UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD NOVAK and ADAM WENZEL,

                  Plaintiffs,                      Case No. 1:21-cv-12008

v.                                              Honorable Thomas L. Ludington
                                              United States District Judge

SHERIFF WILLIAM L. FEDERSPIEL,
in his official and personal capacities,

                  Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING MOTIONS FOR DISCOVERY AND STATUS CONFERENCE AS MOOT, AND DISMISSING CASE WITH PREJUDICE**

In October 2017, law enforcement officers received a dispatch call reporting an armed domestic assault at a hunting cabin in Merrill, Michigan. At the cabin, officers found that Benjamin Heinrich had retrieved one of fourteen firearms from an unlocked and accessible gun cabinet, aimed it at the mother of his infant child, and demanded she leave. Officers arrested Heinrich and seized the fourteen firearms. But Heinrich maintains he did not own the firearms stored two feet away from the bed he slept in for over three years. Plaintiffs Gerald Novak and Adam Wenzel—loosely related to Heinrich—claim they own the seized firearms, although they concede they cannot produce any "papers" which would corroborate their ownership claims.

Beginning in 2018, Plaintiffs began contacting the Saginaw County Sheriff's Office to demand the return of the firearms they claim to own. The Sheriff's Office, led by Sheriff William Federspiel, refused because Plaintiffs could not demonstrate they owned the firearms. So, rather than file a motion pursuant to Michigan law that expressly entitled Plaintiffs to file to recover the property, Plaintiffs embarked on this litigation journey, now in its fifth year, which has included

numerous stops at Michigan state courts including the Michigan Supreme Court, this Court, and the Sixth Circuit Court of Appeals. The delay is due in part to the interplay between complex constitutional-torts and less-than-clear Michigan forfeiture law, which is admittedly inapt to address situations such as this: where neither party has initiated forfeiture proceedings and putative property owners cannot prove the property they seek returned is theirs.

Currently before this Court is Plaintiffs' Motion for Partial Summary Judgment on Count I against Defendant Sheriff William Federspiel in his official capacity, and Defendant's Cross-Motion for Summary Judgment on all counts in both his personal and official capacities. For the reasons explained below, Plaintiffs' Motion will be denied, Defendant's Motion will be granted, and the above-captioned case will be dismissed with prejudice in its entirety.

## I.

### A.

This case began nearly seven years ago, on October 24, 2017. Around 10:00 that night, officers from the Saginaw County Sheriff's Office and the Chesaning Police Department responded to Haley Rosalez's dispatch call reporting she had been domestically assaulted at gunpoint in a hunting cabin in Merrill, Michigan. ECF No. 10-2 at PageID.139. Upon arrival, officers saw Rosalez in a bedroom of the cabin, "frightened and scared." ECF No. 10-2 at PageID.140. She showed officers a video she recorded using her cell phone camera which captured Benjamin Heinrich—the father of Rosalez's child—walking to an unlocked gun cabinet or safe in the cabin's bedroom, taking out a rifle, and aiming it at Rosalez while their infant daughter was in the room, demanding she "get the fuck out" of the cabin. ECF No. 10-2 at PageID.140; ECF No. 79 at PageID.2621-22; *see also* ECF No. 10-4 at PageID.245; PageID.248, 252.

Officers handcuffed Heinrich and escorted him outside of the cabin for questioning. ECF No. 79-2 at PageID.2649. Heinrich told officers that his daughter cried multiple times throughout the evening and Rosalez refused to help. *See id.* at PageID.2649–50. Heinrich admitted that, after he and Rosalez had been fighting, he walked into a bedroom in the cabin, grabbed a rifle, aimed it at Rosalez, and demanded she leave the cabin at gunpoint. *Id.* at PageID.2650. Officers arrested Heinrich, transported him to the Saginaw County Jail, and seized the following 14 firearms from the cabins:[1]

1. A black Remington 7600 Rifle (SN: 8333002)
2. A Remington Shotgun (SN: T123283V)
3. A green Remington 710 Rifle (SN: 71116295)
4. A brown Colman 781 Rifle / Air Soft Gun (SN: 489501837)
5. A Dumoulin & Co. Shotgun (no serial number)
6. A brown Winchester 94 Rifle (SN: 1806102)
7. A brown Kodiak 260 Rifle (no serial number)
8. A brown Marlin 60 Rifle (SN: 00231057)
9. A brown Remington 1100 Rifle (SN: 104238X)
10. A brown New England 398848 Shotgun (SN: NB218059)
11. A silver 22 Caliber Remington Revolver Pistol (no serial number)
12. A brown Savage 2204 Rifle (SN: 410)
13. A brown Remington 572 Rifle (no serial number)
14. A brown Gamemaster 760 Rifle (SN: A7080267)

*See id.* at PageID.2650–56; *see also* ECF No. 10-4 at PageID.253–66.

In November 2017, Heinrich pleaded guilty to domestic violence in violation of MICH. COMP. LAWS § 750.81(2). *See* ECF No. 2-4 at PageID.57–58. The following month, Judge A.T. Frank of the 70th District Court of Saginaw County sentenced Heinrich to one year of probation.

---

[1] The seizure's rationale is the subject of some dispute. The incident report states, in one section, that all 14 guns were seized for "safe keeping," ECF No. 79-2 at PageID.2650, but, in another, states that only 13 were seized for safe keeping because the specific shotgun Heinrich aimed at Rosalez was seized as evidence. *Id.* at PageID.2651. And the crime report individually notes eleven of the guns were seized as "evidence" while the other three were seized "for safekeeping." *See id.* at PageID.2651–56. Further still, Defendants claim to have seized all firearms incident to Heinrich's arrest. ECF No. 10-2 at PageID.140.

*Id.* at PageID.58-59. Heinrich complied with all terms of his probation and was discharged from state supervision in January 2019. *Id.*; *see also* ECF No. 79 at PageID.2626.

Enter Gerald Novak and Adam Wenzel—Plaintiffs in this case. Plaintiff Novak is Heinrich's uncle and Plaintiff Wenzel is Heinrich's step-cousin once removed. ECF Nos. 2-5 at PageID.61; 2-6 at PageID.63. Plaintiffs claim that Heinrich did not own the cabin he was living in at the time of the domestic dispute and did not own the fourteen firearms stored in an unlocked cabinet within the cabin, including the firearm Heinrich aimed at Rosalez. *See* ECF No. 2 at PageID.35 n. 1. Instead, Plaintiff Novak claims to own the cabin, and Plaintiffs Novak and Wenzel claim to own the fourteen firearms seized from the cabin in October 2017, although they concede "there are no existing . . . papers" to corroborate their ownership claims. *Id.* at PageID.37.

Although it is unclear when Plaintiffs first learned about Heinrich's arrest and the seizure of the fourteen firearms they claim to own, Plaintiffs did not contact the Saginaw County Sheriff's Office to retrieve the firearms until June 2018.[2] ECF No. 79-5 at PageID.2661. But the Sherriff's Office refused to return the firearms to Plaintiffs because Plaintiffs could not prove ownership. *Id.* at PageID.2661 (noting the guns "have no record"); PageID.2662 (noting Plaintiffs had "no proof of ownership"). So, Plaintiffs embarked on an ongoing, five-year odyssey of legal actions involving stops at state court, this Court, and the Sixth Circuit Court of Appeals.

**B.**

Plaintiffs' voyage began in state court on May 13, 2019, when Plaintiffs filed a complaint in the 10th Circuit Court for the County of Saginaw for claim and delivery against the Saginaw

---

[2] Plaintiffs' Amended Complaint avers that Plaintiffs did not seek return of the firearms until 2019, but emails attached to the Complaint demonstrate that Plaintiffs called the Saginaw County Sherriff's Office "asking for the guns back" as early as June 2018. *Compare* ECF No. 79 at PageID.2626 *with* ECF No. 79-5 at PageID.2661

County Sheriff's Office and the elected Sheriff William Federspiel, seeking the return of the firearms. *Novak v. Saginaw Cnty. Sheriff*, No. 19-039371-PD (Mich. Cir. Ct. Saginaw Cnty. May 13, 2019); ECF No. 2-9 at PageID.81–90; *see also* ECF No. 11-1 at PageID.898. As explained in greater detail *infra* Section III.C, a claim-and-delivery action requires a plaintiff to prove they had a right to possess the property at issue, and that the property was unlawfully taken from them. *See Sutton Leasing, Inc. v. Veterans Rideshare, Inc.* 468 F. Supp. 3d 921, 938 (E.D. Mich. 2020); Mich. Ct. R. 3.105 (describing claim and delivery elements and procedural requirements). But, in an August 2020 order granting in part Plaintiffs' motion for leave to amend their state complaint, Judge André R. Borrello explained that Plaintiffs could initiate an "expedited [forfeiture] hearing to which [they were] entitled under state law," avoiding "the more cumbersome and expensive process" for a civil claim and delivery action. ECF No. 11-2 at PageID.1116–17 (citing MICH. COMP. LAWS § 600.4705(1)).

In January 2021, the 10th Circuit Court dismissed the case because it did not have jurisdiction over Plaintiffs' claim to the New England rifle Heinrich used to threaten Rosalez, because this specific rifle was an "instrumentality of a crime" subject to forfeiture under MICH. COMP. LAWS § 600.4701 *et seq.*, and thus only the state *district* court would have jurisdiction over a forfeiture claim, the only cognizable claim Plaintiffs could pursue to recover this rifle. *Id.* (citing MICH. COMP. LAWS §§ 600.8303, 600.4703(5)). The state circuit court also refused to "split the claim" between this firearm and the other 13—which may have also been "instrumentalities of a crime" subject to forfeiture proceedings—because, even if they were not instrumentalities of Heinrich's crime, the state district court has "the same power as the circuit court" with respect to general civil actions to recover property allegedly unlawfully taken, such as claim and delivery.

*Id.* at 7–9, *in* ECF No. 2-9 at PageID.87–89 (citing MICH. COMP. LAWS § 600.83008(1)). In sum, the state circuit court held that that Plaintiffs filed the wrong claim in the wrong court.

So Plaintiffs filed a separate action on February 10, 2021, in the 70ᵗʰ District Court of Saginaw County but continued to pursue their "claim and delivery" action rather than initiate forfeiture proceedings. *See Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-0781-GZ (70th Mich. Dist. Ct. Feb. 24, 2021); ECF No. 11-16 at PageID.1145. Notably, unlike Plaintiffs' suit in the state circuit court, the only named defendant in their district court case was the Saginaw County Sheriff's Office—Sheriff Federspiel himself was not a party. *See* ECF No. 11-16 at PageID.1145. The state district court granted summary disposition in favor of the Sheriff's Office, holding that the office was "not a legal entity subject to suit and Plaintiffs' Claim and Delivery action is barred by governmental immunity." ECF No. 11-24 at PageID.1253.

Plaintiffs appealed. ECF No. 11-25 at PageID.1254; *Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-045333-AV (Mich. 10th Cir. Ct. Saginaw Cnty. September 3, 2021). And while this state appeal was pending, Plaintiffs filed their first Complaint in this Court against Defendant Sheriff Federspiel in both his official and personal capacities, alleging he violated 42 U.S.C. § 1983 by depriving Plaintiffs of rights secured by the Fourth, Fifth, and Fourteenth Amendment. ECF No. 1. Plaintiffs further sought claim and delivery and raised an alternative procedural due process claim. *Id.*

Accordingly, this Court ordered a stay, finding *Colorado River* abstention was appropriate. ECF No. 5; *Novak v. Federspiel*, No. 1:21-CV-12008, 2021 WL 5198521 (E.D. Mich. Nov. 9, 2021), *rev'd and remanded*, No. 21-1722, 2022 WL 3046973 (6th Cir. Aug. 2, 2022). But the Sixth Circuit Court of Appeals reversed, holding a *Colorado River* stay was unwarranted because Plaintiffs' federal case—pursuing multiple constitutional claims and seeking damages—was not

- 6 -

sufficiently "parallel" to his state claim and delivery action which sought only to recover the seized firearms. *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2 (6th Cir. Aug. 2, 2022); *see also* ECF No. 12.

Two days after the Sixth Circuit issued its opinion, Plaintiffs filed a renewed motion for preliminary injunction, or alternatively for summary judgment on their claim and delivery count, seeking the immediate return of the firearms seized by the Saginaw County Sheriff's Office, excluding the one firearm Heinrich used to threaten Rosalez. *See* ECF No. 13. Defendant responded, ECF No. 19, and filed a Cross-Motion for Summary Judgment on the claim and delivery count, arguing it was barred by claim preclusion, Defendant was immune, and Plaintiffs could not establish the requisite proofs. ECF No. 20.

On November 23, 2022—while Plaintiffs' state appeal was still pending—this Court exercised *Pullman* abstention[3] and *Burford* abstention,[4] and stayed the case, again, due to ambiguities in Michigan law pertaining to the intersection of forfeiture and claim-and-delivery proceedings. *Novak v. Federspiel*, 646 F. Supp. 3d 878, 888 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874

---

[3] As explained, "*Pullman* abstention is warranted when a constitutional issue would be avoided by resolving an 'unclear' state-law claim." *Novak v. Federspiel*, 646 F. Supp. 3d 878, 888 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023), *and motion for relief from judgment denied*, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023).

[4] As explained, *Buford* abstention is "required if federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern" and "applies only if a federal court's interpretation of state law is likely to 'interfere with the proceedings or orders of state administrative agencies.'" *Novak v. Federspiel*, 646 F. Supp. 3d 878, 893 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal* dismissed, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023), *and motion for relief from judgment denied*, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)).

(6th Cir. July 10, 2023), *and motion for relief from judgment denied*, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023); *see also* ECF No. 37. After describing the historical evolution of both causes of action, this Court noted "the *structure* of [Michigan's Omnibus Forfeiture Act (OFA)] apparently prohibits claim-and-delivery actions before a court with jurisdiction determines whether the property is subject to forfeiture and was properly seized. But a careful reading of § 600.4703(5)'s *text* permits claim-and-delivery actions before those determinations are made." *Novak*, 646 F. Supp. at 891 (emphasis in original). To make matters more complicated, this Court noted that, under the OFA, "the seizing agency is not always required to initiate forfeiture proceedings" in the first instance. *Id*.; *see also* Mich. Comp. Laws §§ 600.4704(1)—(5).

Accordingly, in addition to staying the case, this Court directed the Parties to "file the following certified questions in the Michigan Supreme Court:"

> (1) Must the seizing agency initiate forfeiture proceedings for firearms seized from a person convicted of domestic violence if no third parties express an ownership interest within 28 days of the person's guilty plea?
> (2) Does the [OFA] preclude the claim-and-delivery action of a purportedly innocent owner of firearms that were seized from another person who was convicted of domestic violence?
> (3) If the seizing agency need not initiate forfeiture proceedings under the Omnibus Forfeiture Act, then must third parties do so before filing a claim-and-delivery action to retrieve the seized property?

*Novak*, 646 F. Supp. at 897.

Plaintiffs appealed, and proceeded to the Sixth Circuit for a second time. ECF Nos. 42; 43. As Plaintiffs' federal appeal was pending, their state appeal was resolved. On November 23, 2022, Judge Borrello of the 10th Circuit Court for the County of Saginaw affirmed the state district court's holding that the "Saginaw County Sherriff's Office is not a legal entity subject to suit." ECF Nos. 50; 50-1. So, this Court lifted the stay and Plaintiffs filed, among other motions, a motion seeking

to "preserve the status quo" of the firearms to prevent their destruction. ECF No. 53. This Court denied Plaintiffs' motion on January 9, 2023. ECF No. 62. Plaintiffs appealed this denial to the Sixth Circuit, too. ECF Nos. 63; 64.

On January 27, 2023, this Court certified the three questions listed above to the Michigan Supreme Court, along with a statement of facts containing the Parties' objections. ECF No. 68 at PageID.2556-66. The case was stayed for a *third* time, pending the Michigan Supreme Court's decision on the three certified questions. *Id.* at PageID.2567. On May 24, 2023, the Michigan Supreme Court declined this Court's request to answer the certified questions. ECF No. 74-1; *In re Certified Questions from United States Dist. Ct. for E. Dist. of Michigan*, 511 Mich. 965, 989 N.W.2d 812 (2023). So the stay was lifted once again. ECF No. 75. The Parties stipulated to the voluntary dismissal of all pending appeals with the Sixth Circuit. *See* ECF Nos. 76; 77.

In accordance with the Parties' stipulation, Plaintiffs filed an Amended Complaint on July 14, 2023, against Defendant William Federspiel, personally, and in his official capacity as Saginaw County Sheriff. ECF No. 79. The twelve counts of the Amended Complaint are as follows:

| Count | Claim |
|-------|-------|
| I | Fifth Amendment Temporary Taking, 42 U.S.C. § 1983 |
| II | Fifth Amendment Permanent Taking, 42 U.S.C. § 1983 |
| III | Inverse Condemnation, Art. X of the Michigan Constitution |
| IV | Fourteenth Amendment Procedural Due Process, 42 U.S.C. § 1983 |
| V | Procedural Due Process, Art. I, § 17 of the Michigan Constitution |
| VI | Fourteenth Amendment Substantive Due Process, 42 U.S.C. § 1983 |
| VII | Substantive Due Process, Art. I, § 17 of the Michigan Constitution |
| VIII | Second Amendment Right to Bear Arms, 42 U.S.C. § 1983 |
| IX | Right to Bear Arms, Art. I, § 6 of the Michigan Constitution |
| X | Fourth Amendment Unlawful Seizure, 42 U.S.C. § 1983 |
| XI | Unlawful Seizure, Art. I, § 11 of the Michigan Constitution |
| XII | Claim and Delivery / Replevin |

*See id.*

Plaintiffs filed a Motion for Partial Summary Judgment on Count I, their temporary takings claim. ECF No. 82. Curiously, Plaintiffs seek summary judgment on this sole claim against Defendant *only in his official capacity*, *id.* at PageID.2713 n.1, yet Plaintiffs filed a simultaneous Motion for Discovery, conceding that "additional evidentiary proofs need to be secured" for their *Monell* official capacity claims. ECF No. 83 at PageID.2738. And on September 11, 2023, Defendant filed a Motion for Summary Judgment on all counts. ECF No. 90.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254,

259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)).

**III.**

Although Plaintiffs only seek summary judgment against Defendant in his official capacity on Count I, ECF No. 82, Defendant seeks summary judgment on all counts and in all capacities. ECF No. 90. Thus, all twelve counts of Plaintiffs' Amended Complaint must be analyzed. The counts of Plaintiffs' Amended Complaint can be categorized as follows: (1) 42 U.S.C. § 1983 claims (Counts I, II, IV, VI, VIII, X); (2) Michigan Constitutional Claims (Counts III, V, VII, IX, XI); and (3) Claim and Delivery (Count XII). ECF No. 79. Each category will be analyzed in turn.

## A.  42 U.S.C. § 1983 Claims

Half of the claims in Plaintiffs' twelve-count Amended Complaint allege Defendant, in both his personal and official capacity, violated 42 U.S.C. § 1983 by depriving Plaintiffs of various constitutional rights. *See* ECF No. 79.

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under the color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution *See* 42 U.S.C. § 1983. Accordingly, to "prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015); *see also Jones v. Muskegon Cnty.* 625 F.3d 935, 941 (6th Cir. 2015). A plaintiff may pursue § 1983 claims against government-defendants in both their personal and official capacities. But each type of suit has its hurdles.

If a government-defendant is sued in their *personal capacity*, the doctrine of qualified immunity will shield them liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Indeed, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Id.*; *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

When analyzing qualified immunity, courts apply the "*Saucier* two step," asking (1) whether a constitutional right has been violated; and (2) whether that right was clearly established—though reviewing courts need not proceed in this order. *See Pearson v. Callahan*,

555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be treated as mandatory."). The latter "clearly established" prong analyzes whether it was sufficiently clear that a reasonable officer would understand their actions violate a right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658 (2012)). While there need not be a case directly on point, existing precedent must place the constitutional question "beyond debate." *Id.* Sources of "clearly established law" include, from most to least persuasive, Supreme Court precedent, controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742. Importantly, when a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

If a government defendant is sued in their *official* capacity, qualified immunity does not apply—but the evidentiary requirements of *Monell v. Dep't of Soc. Servs. Of City of New York* do. *See Kentucky v. Graham*, 473 U.S. 159, 166, (1985) (noting "[m]ore is required" by a plaintiff pleading official-capacity § 1983 claims). In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). And "an official-capacity suit is, in all respects other than name, to be treated as a suit against" the municipality that employs the officer-defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 464 (1985)). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who deprives someone of their constitutional rights. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). And a municipality cannot be liable

if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017). Instead, municipalities are only liable under *Monell* for their "official policies" which cause an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692.

Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) single actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

Plaintiffs allege deprivations of their Second, Fourth, Fifth, and Fourteenth Amendment rights, ECF No. 79, but seek summary judgment only on their Fifth Amendment temporary taking claim against Defendant in his official capacity. ECF No. 82. Defendant, however, seeks summary judgment on all claims and in both capacities. Accordingly, each of Plaintiffs' § 1983 claims will be addressed in turn.

### 1.  Fifth Amendment Takings (Counts I and II)

Plaintiffs first allege that Defendant deprived them of their Fifth Amendment rights by taking their property without just compensation. ECF No. 79 at PageID.2628–32. In Count I, Plaintiffs allege Defendant committed a "temporary" taking by physically *retaining* the firearms after Heinrich's criminal prosecution concluded. *Id.*. Alternatively, in Count II, Plaintiffs allege

Defendant committed a "permanent" physical taking. *Id.* at PageID.2630–32. Plaintiffs seek summary judgment *only* on their temporary taking claim (Count I), and against Defendant *only* in his official capacity. ECF No. 82 at PageID.2708-09. Defendant, however, seeks summary judgment on both claims and in both capacities, arguing there has been no Fifth Amendment taking, as a matter of law. ECF No. 90 at PageID.2832 (citing ECF No. 87 at PageID.2772–81). Because a genuine issue of material fact exists as to whether Plaintiffs' own the guns Defendant physically retained, Plaintiffs' Motion for Partial Summary Judgment on Count I will be denied. But Defendant's Motion for Summary Judgment on both takings claims, Count I and II, will be granted because, even *assuming* Plaintiffs owned the guns, Plaintiffs do not have a cognizable Fifth Amendment claim.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *see Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), provides "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. This Clause was intended to prevent the Government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 537, (2005); *see also Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 123 (1978); *Armstrong v. United States*, 364 U.S. 40, 49 (1960); *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 325 (1893). The Supreme Court has noted the "considerable difficulty" in answering the question of what constitutes a "taking" for the purposes of the Fifth Amendment. *Penn Cent. Transp*., 438 U.S. at 123. But physical—as opposed to regulatory—takings are often clear. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021) ("These sorts of physical appropriations constitute the clearest sort of taking[.]" (internal quotations omitted)). A physical taking occurs when the government (1) "uses its power of eminent

domain to formally condemn property," (2) "physically takes possession of property without acquiring title to it," or (3) occupies it. *Id.* at 147–48 Regardless of form, "[w]hen the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Id.* at 147 (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321 (2002)).

But the government cannot unconstitutionally take what is not owned. It is axiomatic that a plaintiff must be able to prove that they, in fact, *own* the property they allege the government unconstitutionally took. *See, e.g.*, *Knick v. Twp. of Scott*, 588 U.S. 180, 139 S. Ct. 2162, 2168, 2170 (2019) (noting a "property *owner* has an actionable Fifth Amendment takings claim when the government takes *his property* without paying for it" (emphasis added)). Indeed, this court already held "[a]s a matter of common sense: *If Plaintiffs do not own the firearms, then they have no constitutional claims regarding unlawful taking, possession, or retention of the firearms*." ECF No. 49 at PageID.2227 (emphasis in original); *see also* ECF No. 37 at PageID.2077 ("If Plaintiffs do not own the firearms, then they have no related claims under the Second, Fourth, Fifth, or Fourteenth Amendments.") And this Court also held—multiple times—that there is a genuine issue of material fact as to whether Plaintiffs owned the firearms they seek returned.[5] *See, e.g.*, ECF

---

[5] The existence of a genuine issue of material fact as to ownership of the seized firearms is not news. This Court has noted this issue numerous times. *See* ECF Nos. 37 at PageID.2077 (noting the "factual determination of ownership" was not resolved and that "[i]f Plaintiffs do not own the firearms, then they have no related claims under the Second, Fourth, Fifth, or Fourteenth Amendments."); ECF No. 49 at PageID.2227 ("As a matter of common sense: *If Plaintiffs do not own the firearms, then they have no constitutional claims regarding unlawful taking, possession, or retention of the firearms*." (emphasis in original), *Id.* at PageID.2228 (noting "it is entirely unclear whether Plaintiffs own the firearm"). Indeed, this Court placed Plaintiffs on notice that their continued assertion that they undisputedly owned the seized firearms may have consequences. ECF No. 62 at PageID.2423–24 ("Plaintiffs repeatedly echo, without any corroboration, that there is 'no dispute' that they 'do own the firearms.' But that argument is patently without merit. There is a dispute . . . A reasonable juror could conclude that Heinrich more likely than not owns the house, the gun cabinet, the 14 firearms it contained, or any combination

Nos. 37 at PageID.2077; 49 at PageID.2227, 2228; 62 at PageID.2423–24 (explaining ownership is a genuine factual issue because, among other reasons, (1) Plaintiffs' self-serving affidavits are not credible, (2) the firearms were found in an unlocked and accessible cabinet less than two feet from Heinrich's bed, (3) Heinrich's mother owned partial title to the hunting cabin the firearms were stored in, (4) Heinrich is related to Plaintiffs, who claim the firearms were "family heirlooms").

But Defendant's Motion for Summary Judgement will be granted, and both Counts I and II will be dismissed, because, even if Plaintiffs owned the firearms at issue, Plaintiffs have no cognizable Fifth Amendment claim and Defendant is entitled to qualified immunity.[6]

As stated, a central requirement of a Fifth Amendment taking—whether "permanent" or "temporary"—is that the government takes an individual's private property for public use. U.S. CONST. amend. V. But the Sixth Circuit has repeatedly recognized, in incredibly analogous cases, the "well-settled" principal that "a state's *seizing* and *retaining* property as part of a criminal

---

of that property. So Plaintiffs will be placed on notice that continuing to deny the existence of a genuine issue of material fact risks deciding the fact adversely." (internal citations omitted)), PageID.2431 ("It is **ORDERED** that Plaintiffs are **NOTICED** that denying a genuine issue of material fact with respect to the ownership of the house, the gun cabinet, the 14 firearms it contained, or any combination of that property may result in sanctions." (emphasis in original). Yet, Plaintiffs claimed they indisputably owned the firearms at least *twelve* times in their Motion for Partial Summary Judgment, ECF No. 82 at PageID.2712–16, 2721, 2724, 2726–27, 2729, 2731, at least *twice* in their supporting reply brief, ECF No. 92, at PageID.2847, 2852, and at least *three times* in responding to Defendant's Motion for Summary Judgment. ECF No. 94 at PageID.2872, 2887, 2886. Not to mention the numerous times Plaintiffs repeatedly argued they owned the seized firearms throughout additional pleadings since this Court clearly noted the factual issue remained in dispute. *See e.g.*, ECF Nos. 65 at PageID.2456; 67 at PageID.2481; 86 at PageID.2758.

[6] Plaintiffs argues in Response to Defendant's Motion for Summary Judgment that Defendant "has not asserted qualified immunity." ECF No. 94 at PageID.2880 n.15. Not so. Defendant expressly raised the affirmative defense of qualified immunity in his Answer, ECF No. 80 at PageID.2696, and addressed qualified immunity in both his Motion for Summary Judgment, ECF No. 90 at PageID.2826–87, and his Reply in support, ECF No. 95 at PageID.2920.

investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation." *Ostipow v. Federspiel*, 824 F. App'x 336, 341 (6th Cir. 2020) (emphasis added).

Plaintiffs' Counsel knows about the case that established this binding precedent, because he initiated it. In *Ostipow v. Federspiel*—notably a case brought by Plaintiffs' Counsel against the same Defendant here—Steven Ostipow moved into his parents' farmhouse and converted a majority of the farmhouse into a "marijuana-growing operation." *Ostipow v. Federspiel*, 824 F. App'x 336, 338 (6th Cir. 2020) [hereinafter *Ostipow I*].¡Saginaw County Sheriff's deputies executed a search warrant and discovered hundreds of marijuana plants, processed marijuana, other narcotics, and drug paraphernalia and equipment. *Id.* But this is not all the deputies seized. The deputies also seized "the farmhouse property" including three large sheds, farm equipment, a car and snowmobile, and, notably, firearms—found both in the farmhouse Steven lived in and his parents' house. *Id.* After Steven pleaded guilty to various drug crimes, the Saginaw County Prosecutor initiated civil forfeiture proceedings. *Id.* at 338–39. The Saginaw County Circuit Court rejected the parents' claim that they were third-party innocent owners with no knowledge of illegal activity and ordered the Saginaw Sherriff's department to dispose of the property. *Id.* at 339 (citing MICH. COMP. LAWS § 333.7524). But, after the property was sold, the state circuit court determined that much of the property was not subject to forfeiture, and the parents demanded Defendant Federspiel return and reassemble this property within 21 days. *Id.* Defendant did not do so, so the parents—through Counsel for Plaintiffs here—sued Defendant in this Court alleging a slew of constitutional torts including a Fifth Amendment takings claim. *Id.*

On *Ostipow*'s *first* trip to the Sixth Circuit, the Sixth Circuit affirmed the district court's grant of summary judgment to Defendant on the parents' Fifth Amendment takings claim, noting

"several circuits have concluded that the use of police power to lawfully seize and retain property categorically bars a Takings Clause claim" and that "[t]he weight of authority holds that claims emanating from the use of police power are excluded from review under the Takings Clause." *Id.* at 341–42. The Sixth Circuit ultimately held the parents' "recourse was through the *Michigan state system, not the federal courts*." *Ostipow v. Federspiel*, No. 22-1414, 2023 WL 6367753, at *1 (6th Cir. Sept. 29, 2023) (emphasis added) [hereinafter *Ostipow II*].

So, one of the parents returned to state court and filed a new suit against Defendant, who in turn removed the suit to federal district court. *Id.* The parent *reasserted* a federal Fifth Amendment takings claim, which was swiftly dismissed on summary judgment by this Court in light of *Ostipow I.* The parent appealed, and the issue was raised at the Sixth Circuit for the second time. *See id.* On appeal, the parent-plaintiff argued that two "out-of-circuit cases"—*Jenkins v. United States*, 71 F.4th 1367 (Fed Cir. 2023) and *Frein v. Pa. State Police*, 47 F.4th 247 (3rd Cir. 2022)—held that *retention* of property seized according to state police power can constitute a Fifth Amendment taking if that power no longer justifies the retention. *Ostipow II* at *2. But the Sixth Circuit affirmatively rejected this argument because, even assuming these cases "correctly identify the contours of the Fifth Amendment," they are not sources of clearly established law to overcome Defendant Federspiel's assertion of qualified immunity. *Id.* at *3.

The law Plaintiffs rely on has not become more clearly established—in the Supreme Court, the Sixth Circuit, or this Court—in the six months since *Ostipow II.* So, Plaintiffs' continued reliance on *Frein* and *Jenkins* is misplaced. *Compare* ECF Nos. 92; 94 at PageID.2870–71 ("Defendant asserts that there has not been *any* federal taking[.] However, *Frein* . . . and *Jenkins* . . . make him in error." (emphasis in original)) *with Ostipow II* at *3 (rejecting *Frein* and *Jenkins* as sources of clearly established law for Defendant).

- 19 -

In sum, Plaintiffs' Motion for Partial Summary Judgement, ECF No. 82, on Count I against Defendant in his official capacity will be denied, because genuine disputes of material fact exist as to ownership of the seized firearms. But Defendant's Motion for Summary Judgement, ECF No. 90, will be granted to the extent it seeks dismissal of Counts I and II, because, even assuming *arguendo* Plaintiffs owned the firearms, Defendant did not unlawfully "take" them in violation of the Fifth Amendment and did not violate clearly established law.

### 2.  Fourteenth Amendment Procedural Due Process (Count IV)

In Count IV, Plaintiffs allege Defendant violated their Fourteenth Amendment right to procedural due process by retaining the seized firearms they claim to own without adequate notice or hearings. ECF No. 79 at PageID.2633–35. Defendant seeks summary judgment and argues the nature of the criminal investigation prevented pre-seizure process and Plaintiffs have deliberately ignored adequate Michigan law post-deprivation process for innocent third-party property owners seeking the return of their seized property. ECF No. 90 at PageID.2834–37. Even assuming Plaintiffs had a sufficient property interest in the seized firearms, they received actual notice of the seizure, and Michigan law—despite its lack of clarity—provides adequate post-deprivation process that Plaintiffs have chosen not to utilize. So, Defendant's Motion for Summary Judgment will be granted and Count IV will be dismissed.

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Procedural due process, "at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest

requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012).

There is a genuine question of material fact as to the first element: whether Plaintiffs have a valid property interest in the seized firearms they seek returned. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [they] must, instead, have a legitimate claim of entitlement to it."); ECF Nos. 37 at PageID.2077; 49 at PageID.2227, 2228; 62 at PageID.2423–24 (noting a genuine issue of fact as to Plaintiffs' ownership of the firearms). This Court will assume *arguendo* that Plaintiffs had a valid property interest in the firearms which was deprived by Defendant, and turn to the crux of the Parties' dispute: whether Plaintiffs received adequate process.

Although the fundamental requirement of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted), the Supreme Court has routinely recognized that due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). When assessing the adequacy of process provided to an individual deprived of their legitimate property interest in a particular case, courts consider (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government interest, including the fiscal or administrative burdens that the additional or substitute procedural requirements would entail. *Id.* (citing *Matthews*, 424 U.S. at 335).

Applying this framework, the Supreme Court has identified a general rule and a "special case." Under the general rule, *pre-deprivation* process is required by the Fourteenth Amendment.

*Id.* On the other hand, in special cases involving random or unauthorized deprivations or situations necessitating 'quick action' by the state, adequate *post-deprivation* process is constitutionally sufficient "simply because [it] is the only [process] the State could be expected to provide." *Id.* at 128 (citing *Parratt*, 451 U.S. at 527; and *Hudson v. Palmer*, 468 U.S. 517 (1984)). In these special cases, "no matter how significant the private interest at stake and the risk of its erroneous deprivation, the [government] cannot be required constitutionally to do the impossible by providing pre[-]deprivation process." *Id.* at 129 (internal citations omitted).

Here, Defendant could not have possibly provided pre-deprivation process to Plaintiffs, even assuming they owned the firearms. Plaintiffs were not present at the hunting cabin when law enforcement arrested Heinrich and seized the fourteen firearms. *See* ECF No. 79-2. Indeed, Plaintiffs were undisputedly unknown to seizing officers and the Saginaw County Sheriff's Office until Plaintiffs reached out to the Sheriff's Office, claimed ownership, and demanded the return of the firearms nearly seven months later. *See* ECF No. 79-5 at PageID.2661. Further, the exigency of the situation necessitated quick action by law enforcement, as they were responding to a domestic violence dispatch call involving threats at gunpoint and observed fourteen accessible firearms at the scene, where a victim and infant child were present. *See Reed v. Presque Isle Cnty.*, No. 1:21-CV-11112, 2023 WL 7545219, at *14 (E.D. Mich. Nov. 13, 2023), *appeal dismissed sub nom. Reed v. Presque Isle Cnty.*, No. 23-2087, 2024 WL 1151686 (6th Cir. Mar. 7, 2024) (holding the government could not have possibly provided pre-deprivation process to unknown and non-present property owner when property was seized in a manner necessitating quick action).

And Michigan's Omnibus Forfeiture Act (OFA) provides constitutionally sufficient post-deprivation process. The Parties are at a cyclical stalemate here, and have been for over a year. *See* ECF No. 68 at PageID.2555. Defendant never initiated forfeiture proceedings because only the

County Prosecutor can do so. ECF No. 57 at PageID.2339; *see also Novak v. Federspiel*, 649 F. Supp. 3d 562, 574 (E.D. Mich. 2023*), appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023) (noting Defendant's contention that only the prosecutor can initiate forfeiture proceedings is correct). In Defendant's view—along with the view of the 10ᵗʰ Circuit Court for the County of Saginaw— "[i]t is incumbent upon *Plaintiffs* to challenge the 'seizure' in the 70ᵗʰ District Court" under MICH. COMP. LAWS § 600.4705(1), which provides:

> "[a] person who did not have prior knowledge of, or consent to the commission of, the crime . . . may move the court having jurisdiction to return the property . . . on the grounds that the property was illegally seized, that the property is not subject to forfeiture . . ., or that the person has an ownership . . . interest in the property and did not have prior knowledge of, or consent to the commission of, the crime[.] The court shall hear the motion within 28 days after the motion is filed.

ECF NO. 57 at PageID.2340-41; MICH. COMP. LAWS § 600.4705(1); *see also* Thomas A. Ginster, *The Victim's Rights--Omnibus Forfeiture Law*, MICH. BAR J. 1304, 1306 (1994) (noting any interested party can file a motion seeking the return of property under the OFA while an underlying criminal case is pending). But Plaintiffs maintain they cannot proceed under § 600.4705(1) because they never received notice of the seizure under the statute, Heinrich's criminal prosecution has concluded, and because it is unclear whether such a motion is even "an available avenue of relief" when the government has not initiated forfeiture proceedings. ECF No. 51 at pageID.2247–49.

This stalemate is due, at least in part, to the inartful drafting of the OFA. As this Court has already explained, the OFA is far from a model of clarity. *See Novak v. Federspiel*, 646 F.Supp.3d 878, 886 (noting Michigan forfeiture law is widely criticized). In attempt to close gaps within the statutory scheme, this Court certified three questions to the Michigan Supreme Court, the answers to which would certainly guide this Court's analysis of Plaintiffs' procedural due process claim. *See* ECF No. 68 at PageID.2555; *supra* Section I.B. But the Michigan Supreme Court respectfully

declined to answer. *In re Certified Questions from United States Dist. Ct. for E. Dist. of Michigan*, 989 N.W.2d 812 (Mich. 2023). So, this Court is left with the OFA's express language, existing precedent, and the Parties' arguments.

Who takes the first step in this situation? The government or Plaintiffs? Here, it is important to note that the government has never sought, and is not seeking, forfeiture of the firearms. Indeed, it is unclear if thirteen firearms—all firearms aside from the one used by Heinrich to threaten Rosalez—are subject to forfeiture in the first instance. *See* MICH. COMP. LAWS § 600.4702(1)(a) (limiting forfeited *real* property to proceeds or instrumentalities of crime); *see also* ECF No. 2-9 at PageID.88 ("Regarding the 13 other firearms, it is less clear whether they were seized pursuant to [the OFA,] as that statute specifically defines property subject to seizure or forfeiture as 'personal property that is the proceeds of a crime, the substituted proceeds or a crime, or an instrumentality of a crime.'" (citing MICH. COMP. LAWS § 600.4702(a))).

*If* the firearms were subject to forfeiture and *if* the government intended to forfeit the firearms, Plaintiffs are correct that the government was statutorily required to notify certain parties. *See* ECF No. 51 at PageID.2247–49. But Plaintiffs are mistaken that they are among the group entitled to such notice. The OFA instructs the government to notify, among other parties, only the person charged with the crime (Heinrich), the victim (Rosalez), and any person with a "*known* ownership interest." MICH. COMP. LAWS § 600.4707 (cross-referencing § 600.4704(1)) (emphasis added). But Plaintiffs' ownership interest is still unknown. And, regardless, Plaintiffs received *actual* notice of the seizure as early as June 2018 and filed multiple state court civil proceedings to contest this seizure, ECF No. 79-5 at PageID.2661, so any procedural due process claim

premised on lack of notice fails as a matter of law.[7] *Ingram v. Cnty. of Wayne*, No. 20-10288, 2021 WL 4479398, at *17 (E.D. Mich. Sept. 30, 2021), *aff'd and remanded sub nom. Ingram v. Wayne Cnty.*, 81 F.4th 603 (6th Cir. 2023) (noting "the weight of binding and persuasive case law confirms" that due process is satisfied when a plaintiff receives actual notice of a seizure or deprivation of their property because individuals with actual notice are not prejudiced and have the opportunity to contest the deprivation at issue); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (denying procedural due process claim, because claimant received actual notice which "more than satisfied [claimant's] due process rights"); *United States v. McGovney*, 270 F. App'x 386, 387 (6th Cir. 2008); *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020) ("If an individual did not receive procedurally adequate notice but was notified in fact that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie.").

To the extent Plaintiffs argue they did not receive an adequate post-deprivation hearing, it is only the result of their own decisions and lack of evidence to support their ownership claims. ECF No. 79 at PageID.2635. Recall the very beginning of this controversy. When Judge Borrello denied Plaintiffs leave to amend their first state complaint to add a procedural due process claim, he explained it is "undisputed that Plaintiff[s] did not pursue the expedited hearing" entitled to them under MICH. COMP. LAWS § 600.4705(1). ECF NO. 11-12 at PageID.1117. After the state circuit court dismissed Plaintiffs' first "claim and delivery" claim, rather than filing a motion with the state district court under 600.4705(1), Plaintiffs again filed for "claim and delivery," this time

---

[7] To the extent Plaintiffs also argue that the government needed to first notify them about the seizure to *allow* Plaintiffs to request an ownership hearing under § 600.4705(1), ECF No. 94 at PageID.2873, this argument is unsupported by the express language of the OFA, which does not place any conditions on a person seeking such hearing. *See* MICH. COMP. LAWS § 600.4705(1).

against the Saginaw County Sheriff's Office as a municipality. *See Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-0781-GZ (70th Mich. Dist. Ct. Feb. 24, 2021); ECF No. 11-16 at PageID.1145. After this complaint was dismissed, Plaintiffs again chose not to avail themselves of § 600.4705(1) and instead simultaneously appealed the state district court dismissal, ECF No. 11-25 at PageID.1254; *Novak v. Saginaw Cnty. Sheriff's Off.*, No. 21-045333-AV (Mich. 10th Cir. Ct. Saginaw Cnty. September 3, 2021), and filed their federal Complaint. ECF No. 1.

Plaintiffs' arguments as to why they have not filed a motion under § 600.4705(1) are not persuasive. First, Plaintiffs argue that the 70th District Court in Saginaw County "confirmed that such process in unavailable" since Heinrich's criminal case was closed. ECF No. 94 at PageID.2881. The record does not support this assertion. At a hearing, the state district judge *asked* Defendant's Counsel why the state district court would have jurisdiction to entertain such motion since the criminal case against Heinrich concluded. ECF No. 67-8 at PageID.2519–20. After some back and forth on the issue, the state circuit judge noted that the availability of relief under § 600.4705(1) did not necessarily preclude the claim and delivery relief sought by Plaintiff. *Id.* at PageID.2549–51. At no point did the state circuit judge "confirm" that § 600.4705(1) relief was unavailable to Plaintiff. *See id.* Further, even if Plaintiffs are correct that they can only receive an ownership hearing under § 600.4705(1) while the underlying criminal case is pending, they had over *six months* to file for an § 600.4705(1) hearing between learning about the seizure of the firearms and Heinrich's criminal dismissal. *Compare* ECF No. 79-5 at PageID.2662 (noting Plaintiffs reached out to Saginaw Sherriff's office in early June 2018) *with* ECF No. 79 at PageID.2626 (noting Heinrich's criminal case was not closed until January 2019). Why did Plaintiffs choose not to file a motion under § 600.4705(1) during this six month period? Plaintiffs do not say.

Plaintiffs next cite *Ingram v. Cnty. of Wayne*, No. 20-CV-10288, 2022 WL 2079866, at *6 (E.D. Mich. June 9, 2022), where Judge Steeh noted that "it is not clear that [§ 600.4705(1) is] an available avenue of relief to [parties] where no forfeiture proceedings have commenced." ECF No. 94 at PageID.2881. But this opinion says nothing more on the subject, and thus does not stand for the proposition that Plaintiffs cannot or should not attempt to avail themselves of statutory process multiple judges have suggested they are entitled to under Michigan law.

In sum, even if Plaintiffs owned the seized firearms, they were not entitled to pre-deprivation process, received actual notice of the seizure, and did not seek post-deprivation process through MICH. COMP. LAWS § 600.4705(1). Accordingly, their procedural due process claim will be dismissed.

### 3.   Fourteenth Amendment Substantive Due Process (Count VI)

In Count VI, Plaintiffs allege Defendant violated their Fourteenth Amendment substantive due process rights for "[r]efusing to return" the firearms Plaintiffs claim to own. ECF No. 79 at PageID.2637-38. Defendant argues his conduct does not "shock the conscience," and, thus, Plaintiffs' substantive due process claim fails as a matter of law. ECF No. 90 at PageID.2837–39. Even assuming *arguendo* Plaintiffs had a property interest in the seized firearms sufficient to mount a substantive due process claim, Defendant rationally retained the firearms, and did not engage in conscience-shocking conduct by refusing to give the firearms to Plaintiffs who have not established ownership.

"Substantive due process is the doctrine that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed." *Johnson v. City of Saginaw*, 980 F.3d 497, 513 (6th Cir. 2020) (internal quotations omitted). To prove a violation of substantive due process in violation of the Fourteenth Amendment, a plaintiff

- 27 -

must first show their liberty or property interests were deprived.[8] *Guertin v. State*, 912 F.3d 907, 918–22 (6th Cir. 2019). "Upon a showing of a deprivation of a constitutionally protected liberty [or property] interest, a plaintiff must show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Id.* at 922. While different formulations for constitutional repugnancy exist, the Sixth Circuit routinely recognizes substantive due process violations when discretionary government action is arbitrary and capricious, willful and unreasoning, conscience-shocking, or extremely irrational. *Johnson v. City of Saginaw*, 980 F.3d 497 (6th Cir. 2020); *Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). Here, Plaintiffs allege Defendant's retention of the firearms both shocked the conscience and was arbitrary and capricious. ECF No. 79 at PageID.2637–38.

As explained, a genuine issue of material fact exists as to whether Plaintiffs had a property interest in the firearms Defendant seized. ECF Nos. 37 at PageID.2077; 49 at PageID.2227, 2228; 62 at PageID.2423–24. But even assuming *arguendo* that Plaintiffs had a property interest in the firearms, the seizure of the firearms and Defendant's subsequent retention did not shock the conscience and was not arbitrary nor capricious.

Although the Sixth Circuit historically conflated the two, it recently emphasized that the "arbitrary and capricious" analysis is separate and distinct from the "shocks-the-conscience standard." *Johnson*, 980 F.3d at 513 n. 10. An action is arbitrary and capricious if it lacks any rational basis. *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011) (citing *Sheffield v. City of Fort Thomas*, 620 F.3d 596, 613 (6th Cir.2010)). Whereas conscience-

---

[8] Notably, "the interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003).

- 28 -

shocking conduct—although not subject to mechanical application, *Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)—has been described as:

> (1) Infringing upon the decencies of civilized conduct,
> (2) So brutal and so offensive to human dignity,
> (3) Interfering with rights implicit in the concept of ordered liberty

*Guertin v. State*, 912 F.3d 907, 923 (6th Cir. 2019) (collecting cases). As these descriptions reveal, conscience-shocking conduct is reserved for seriously egregious behavior, and the subjective "shocks-the-conscience test" should be employed by courts to "prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees." *Id.*

Here, Defendant's seizure and retention of the fourteen firearms was rational and comes nowhere close to shocking the conscience. Upon arriving at a hunting cabin in response to a report of armed domestic violence, Saginaw County Sheriff's deputies and Chesaning police officers saw Rosalez—the victim—was frightened. ECF No. 10-2 at PageID.140. Responding law enforcement then learned that Heinrich, drunk and angry, had grabbed one of fourteen firearms from an unlocked and accessible gun cabinet two feet away from the bed in the cabin's main bedroom, aimed it at Rosalez, and demanded she "get the fuck out" of the cabin—all in front of their infant child. *See* ECF No. 2-2 at PageID.48–49; 10-2 at PageID.140; 10-4 at PageID.245, 248, 252; 10-9 at PageID.429; 79 at PageID.2622. Accordingly, the firearms were rationally seized incident to Heinrich's arrest, for the health and safety of officers and others, and as evidence of criminal conduct. *See Novak v. Federspiel*, 646 F. Supp. 3d 878, 888 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal dismissed,* No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023), *and motion for relief from judgment denied*, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023) (noting the firearms were "lawfully seized incident to" Heinrich's arrest).

Defendant's retention of the firearms was rational, too. The Saginaw Sherriff's Office declined to return the small arsenal of weapons to Plaintiffs, who were unknown to the seizing officers and not present at the scene, both because doing so was in the interest of safety and because Plaintiffs could not show they owned any of the seized firearms. *See* ECF No. 79-5 at PageID.2661 (noting Plaintiffs "have no record" that they owned the firearms and, if they were the owners, "shouldn't [have] trusted a violent alcoholic to secure their guns"); PageID.2662 ("[T]he longer we keep the guns the better . . . [t]he aunt and uncle wanted [the guns] back, and I replied too bad, no proof of ownership, and the one who had last custody of the guns was a violent drunk."). Taken to its practical conclusion, Plaintiffs' position is that law enforcement should turn over lawfully seized weapons to people who , concededly, cannot show they own them. This is irrational. It does not shock the conscience that Defendant "refuses to return" firearms Plaintiffs may not own. *See* ECF Nos. 2 at PageID.37 (noting Plaintiffs have no records to show they owned the guns); 62 at PageID.2423–24.

In sum, even if Plaintiffs could demonstrate, today, that they owned the firearms, their substantive due process rights were not violated by the seizure of the firearms in 2017, nor the Defendant's retention of the firearms since. Accordingly, Defendant's Motion for Summary Judgment will be granted to the extent it seeks dismissal of Plaintiffs' substantive due process claim.

### 4.  Second Amendment Right to Bear Arms (Count VIII)

In Count VIII, Plaintiffs allege Defendant violated their Second Amendment rights by retaining the firearms they claim to own long after the criminal prosecution of Heinrich concluded. ECF No. 79 at PageID.2638–40. Defendant seeks summary judgment because the seizure and retention of the fourteen firearms does not prohibit Plaintiffs from acquiring or owning other

firearms. ECF No. 90 at PageID.2839–41. Plaintiffs respond that Defendant "misframes" the issue, and argues Defendant "has not even attempted" to justify his conduct under the "historical tradition" recently promulgated by the Supreme Court in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen.* ECF No. 94 at PageID.2877–81. Again, there is a material question of fact as to whether Plaintiffs owned the firearms Defendant seized. ECF Nos. 37 at PageID.2077; 49 at PageID.2227, 2228; 62 at PageID.2423–24. But even assuming *arguendo* that Plaintiffs did own the firearms, Defendant did not violate their clearly established Second Amendment rights. So summary judgment will be granted to Defendant on this claim.

The Second Amendment confers an individual the right to keep and bear arms in their home for the purpose of self-defense. U.S. CONST. amend. II; *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010) (incorporating the Second Amendment to the states via the Fourteenth Amendment). While significant precedent exists to assist courts in determining whether *laws and regulations* violate this Second Amendment right, there is little controlling law addressing when an individual's *seizure* of specific firearms is similarly violative. Here, Plaintiffs challenge the latter rather than the former. ECF Nos. 79 at PageID.2639; 94 at PageID.2877–79.

In 2015, the Sixth Circuit noted an absence of controlling authority on whether a law enforcement officer's seizure of specific firearms violates the Second Amendment. *Meeks v. Larsen*, 611 F. App'x 277, 286 (6th Cir. 2015) (citing *Doutel v. City of Norwalk*, No. 3:11–CV–01164 VLB, 2013 WL 3353977, at *25 (D.Conn. July 3, 2013)). The Sixth Circuit specifically noted that preeminent Second Amendment Supreme Court precedent at the time—*District of Columbia v. Heller* and *McDonald v. Chicago*—did not address constitutional tort claims, did not suggest that a law enforcement officer "might be subject to monetary damages for seizing

- 31 -

firearms[,]" and did not "clearly establish that an individual's Second Amendment rights are violated by the deprivation of specific firearms where the individual's right to acquire other firearms is not abridged." *Id.* (citing *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir.), *cert. denied*, 574 U.S. 993 (2014) ("Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun . . . is an issue that is just beginning to receive judicial attention."); *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (finding no Second Amendment violation where the defendant lawfully seized one firearm and did not prohibit the plaintiff from acquiring other firearms, but refusing to foreclose the possibility that the Second Amendment applies to specific deprivations).

The law has not become more clearly established since. Plaintiffs do not cite any Supreme Court precedent, Sixth Circuit precedent, nor decisions of this Court which clearly establish an individual's Second Amendment right to be free from governmental retention of specific seized firearms. *See* ECF No. 94 at PageID.2877–81; *see also Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (noting plaintiffs have the burden of identifying clearly established law when defendants assert qualified immunity). Nor could they, as no such decisions exist.

Instead, Plaintiffs first point to the Supreme Court's 2022 decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).[9] ECF No. 94 at PageID.2877 ("Defendant's only way to avoid Second Amendment liability is to fulfill the test provided by *[Bruen]*."). But *Bruen*— which articulated a new test for courts to apply when analyzing the constitutionality of *laws* and *regulations* implicating the Second Amendment—does not apply to Plaintiffs' allegation that

---

[9] For a thorough analysis of Supreme Court Second Amendment precedent leading up to and including *Bruen*, *see United States v. Ross*, No. 1:23-CR-20168, 2023 WL 7345908 (E.D. Mich. Nov. 7, 2023).

Defendant's physical *retention* of the seized firearms violated the Second Amendment, and thus does not serve as a source of clearly established law to deprive Defendant of qualified immunity.

Before *Bruen*, consistent with the Supreme Court's earlier opinions in *Heller* and *McDonald*, federal courts applied a two-step test when analyzing the constitutionality of laws and regulations implicating the Second Amendment. *See United States v. Ross*, No. 1:23-CR-20168, 2023 WL 7345908, at *9 (E.D. Mich. Nov. 7, 2023). "The first step analyzed whether the challenged law burdened conduct protected by the Second Amendment, based on the 'original scope of the right based on its historical meaning.'" *Id.* (quoting *Bruen*, 597 U.S. at 18). If the challenged law did not burden Second Amendment conduct, "then the analysis [could] stop there" because "the regulated activity [was] categorically unprotected." *Bruen*, 597 U.S. at 18. If, on the other hand, the challenged law was found to burden Second Amendment conduct, courts proceeded to step two and applied either intermediate[10] or strict scrutiny,[11] depending on whether the challenged law was found to burden "core" Second Amendment protections.[12] *See id.* at 18–19. "But the Supreme Court in *Bruen* felt that the traditional two-step approach was 'one step too many.'" *Ross*, 2023 WL 7345908, at *9 (quoting *Bruen*, 597 U.S. at 19). The Supreme Court

---

[10] Under intermediate scrutiny, a challenged law will be upheld if it is "substantially related to an important governmental objective" or interest. *Clark v. Jeter*, 486 U.S. 456 (1988).

[11] "Under strict scrutiny, the government must adopt 'the least restrictive means of achieving a compelling state interest.' " *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014)).

[12] "What precisely constitute[d] the 'core' of the Second Amendment, however, . . . produced some disagreement among the circuit courts, particularly with respect to whether such protections extended beyond the home." MICHAEL A. FOSTER, CONG. RSCH. SERV., LSB10773, THE SECOND AMENDMENT AT THE SUPREME COURT: *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN* 2 (2022). But courts "generally maintain[ed] that the core Second Amendment right is limited to self-defense *in the home*." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18 (2022) (internal quotations omitted) (emphasis in original).

affirmed the first step and rejected the second, articulating a new test focused solely on text and history:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its *regulation* by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022) (quoting *Konigsberg v. State Bar of Cal*., 366 U.S. 36, 50, n. 10 (1961)) (emphasis added).

Plaintiffs here try to stretch *Bruen*'s historical tradition test to cover seizures and subsequent retention of individual firearms. But nothing in *Bruen* suggests such elasticity. Indeed, *Bruen*—like *Heller* and *McDonald*—does not discuss the seizure or retention or firearms whatsoever. *See id.*; *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *D.C. v. Heller*, 554 U.S. 570 (2008).

Plaintiffs then point to the same non-controlling Third Circuit precedent they relied on throughout their Fifth Amendment takings claim: *Frein v. Pa. State Police*, 47 F.4th 247 (3rd Cir. 2022). ECF No. 94 at PageID.2878–79. But, as noted above, *Frein* does not control this Court's analysis nor does it serve as a source of clearly established law to place Defendant on notice of the constitutionality of his conduct. *See supra* Section III.A.1; *Ostipow II*, at *3 (noting *Frein* is not a Sixth Circuit nor Supreme Court decision and, since it was decided in 2022, could not control the defendant's earlier conduct).

In sum, the seizure and Defendant's retention of fourteen firearms—the ownership of which had not and has not been determined—did not violate the Second Amendment. And even if it did, Defendant would still be entitled to qualified immunity. So Defendant's Motion for

Summary Judgement will be granted to the extent it seeks dismissal of Plaintiffs' Second Amendment claim.

### 5.  Fourth Amendment Seizure (Count X)

In Count X, Plaintiffs argue Defendant's refusal to return the firearms they claim to own deprived them of their Fourth Amendment rights but readily concede that binding Sixth Circuit precedent, *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999) forecloses their claim. ECF No. 79 at PageID.2641 (noting "[t]his claim/count is pled to preserve the claim (for future appellate practice"). In *Fox*, the Sixth Circuit rejected a claim that officer defendants violated the Fourth Amendment by refusing to return a plaintiff's driver's licenses after he asked for it, holding that "[o]nce th[e] act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies."[13] *Fox v. Van Oosterum*, 176 F.3d 342, 347, 351 (6th Cir. 1999).

Accordingly, Plaintiffs' claim that Defendant violated the Fourth Amendment by refusing to return firearms they *allege* they owned, fails as a matter of governing law. So Defendant's Motion for Summary Judgment will be granted to the extent it seeks dismissal of Plaintiffs' Fourth Amendment claim.

### B.  Michigan Constitutional Claims

In Counts III, V, VII, IX, and XI, of their Amended Complaint, Plaintiffs assert various violations of the Michigan Constitution under *Bauserman v. Unemployment Ins. Agency*, 983 N.W.2d.85 (Mich. 2022). *See generally* ECF No. 79. In *Bauserman*, the Michigan Supreme Court "opened the door for plaintiffs seeking monetary damages stemming from constitutional torts as

---

[13] Judge Clay disagreed with this holding and noted in his partial concurrence that a Fourth Amendment seizure would occur, more broadly, "whenever the government meaningfully interferes with an individual's interest in property." *See Fox v. Van Oosterum*, 176 F.3d 342, 354–58 (6th Cir. 1999) (Clay, J., concurring in part and dissenting in part).

brought against a state" but clarified that the holding does not apply to municipal officials. *Wineries of the Old Mission Peninsula Ass'n, et al.,* v. *Peninsula Twp., Defendant, & Protect the Peninsula, Inc.,* No. 1:20-CV-1008, 2024 WL 1152526, at *7 (W.D. Mich. Feb. 29, 2024). In his Motion for Summary Judgment, Defendant notes he is a municipal—rather than a state—official and, thus, all of Plaintiffs' "*Bauserman* claims"—which parallel the underling allegations of Plaintiffs' § 1983 claims—fail as a matter of law. ECF No. 90 at PageID.2830–32. Plaintiffs concede as much in their Response and agree that all "*Bauserman* claims are properly dismissed" absent any change in binding Michigan Supreme Court precedent. ECF No. 94 at PageID.2870.

Accordingly, Defendant's Motion for Summary Judgment will be granted to the extent it seeks to dismiss counts III, V, VII, IX, and XI of Plaintiffs' Amended Complaint.

### C.  Claim-and-Delivery/Replevin

In Count XII, Plaintiffs "seek a claim-and-delivery / replevin judgment to immediately effectuate the return" of the firearms they allegedly own. ECF No. 79 at PageID.2643. Defendant seeks summary judgment because (1) Plaintiffs' claim is barred by res judicata; (2) Plaintiffs cannot establish the elements of claim and delivery as a matter of law; and (3) even if they could, Defendant is entitled to immunity under Michigan's Governmental Tort Liability Act (GTLA).[14] ECF No. 87 at PageID.2782–92. Because Plaintiffs cannot establish the elements of claim and delivery as a matter of law, Defendant will be granted summary judgment on this claim.

Under Michigan law, "[t]he claim formerly known as 'replevin' is now known as 'claim and delivery.'" *Gen-Wealth, Inc. v. Freckman*, No. 353584, 2021 WL 1941752, at *10 (Mich. Ct.

---

[14] Because Plaintiffs seek injunctive relief in the form of an "immediate[] . . . return of the . . . firearms" instead of damages, ECF No. 79 at PageID.2642–43, GTLA immunity does not bar their "claim and delivery" claim. *See Wright v. Genesee Cnty.*, 934 N.W.2d 805, 809 (Mich. 2019) (noting tort "claims seeking a remedy other than compensatory damages" "are not barred by the GTLA").

App. May 13, 2021) (citing *Whitcraft v. Wolfe*, 384 N.W.2d 400, 402 n. 1 (Mich. Ct. App. 1985)).

"Unlike forfeiture's focus on the *liability* of real and personal property, the civil [tort] for 'claim and delivery' is all about the *possession* of personal property." *Novak v. Federspiel*, 646 F. Supp. 3d 878, 886 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023), *and motion for relief from judgment deni*ed, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023) (emphasis in original) (noting "[b]ecause Plaintiffs have no proof of title to the firearms lawfully seized incident to the arrest of another person, their recovery attempt seems more apt for forfeiture than for claim and delivery.").

"To prevail on a claim and delivery action, [p]laintiff[s] must prove that [a] [d]efendant[] unlawfully took or detained goods or personal property, to which [p]laintiff . . . ha[s] a right to possess." *Sutton Leasing, Inc. v. Veterans Rideshare, Inc*., 468 F. Supp. 3d 921, 938 (E.D. Mich. 2020). Thus, in this case, Plaintiffs must prove both that they had a right to possess the seized firearms, and that Defendant's retention of the firearms was unlawful. As this Court has repeated throughout this Opinion and others, there is a genuine question of fact as to whether Plaintiffs owned the firearms they claim, in this count, were unlawfully taken from them or detained. *See* ECF Nos. 37 at PageID.2077; 49 at PageID.2227, 2228; 62 at PageID.2423–24. But, as a practical matter, even if this factual question was resolved in Plaintiffs' favor at this stage—seven years after the firearms were seized—Defendant's retention of the firearms since this seizure cannot possibly be "unlawful," precisely *because* ownership has been, and continues to be, disputed. How can Defendant's retention of firearms seized incident to a lawful arrest violate the law when Defendant does not know how owns the firearms and no one has proved ownership? Plaintiffs do not say, arguing only that they undisputedly own the seized firearms and that "federal law

mandate[s] their prompt and required return." ECF No. 94 at PageID.2883. But the "federal law"
cited by Plaintiffs is wholly inapplicable. *See* ECF No. 94 at PageID.2883; *United States v.
Francis*, 646 F.2d 251, 262 (6th Cir. 1981) (affirming district court denial of defendant's motion
under Rule 41(e) of the Federal Rule of Criminal Procedure because the Government no longer
possessed the money at issue and defendant's "remedy was to contest the tax lien" in state court);
*People v. Washington*,[15] 351 N.W.2d 577, 580 (Mich. Ct. App. 1984) (involving defendant's
motion for the return of property seized from his person under controlled-substances forfeiture acts
rather than the OFA); *Frein v. Pa. State Police*, 47 F.4th 247 (3rd Cir. 2022) (nonbinding Third
Circuit precedent decided five years after the firearms here were seized, involving parent plaintiffs
who undisputedly owned the seized firearms).

In sum, even if the material question of ownership is resolved in Plaintiffs' favor today,
Plaintiffs cannot go back in time and argue Defendant's retention of the firearms was unlawful,
where Defendant was never presented with any proof that Plaintiffs owned the fourteen seized
firearms. In this way, this Count of Plaintiffs' Amended Complaint, ECF No. 79, is unique. In all
the preceding analyses of Plaintiffs' claims throughout this Opinion, this Court has been able to
cleanly assume *arguendo*, for the purposes of Defendant's Motion for Summary Judgment, that
Plaintiffs owned the seized firearms. But here, the mere fact that ownership has been contested for
the past seven years *necessarily* defeats Plaintiffs' claim-and-delivery claim, because it is not

---

[15] Indeed, this Court already held *Washington* was "inapt here" for a "myriad of reasons" and,
upon examination, supported *Defendant's* position that a claim and delivery action is unavailable
to Plaintiffs unless they initiate forfeiture proceedings first. *Novak v. Federspiel*, 646 F. Supp. 3d
878, 892 (E.D. Mich.), *reconsideration denied*, 644 F. Supp. 3d 378 (E.D. Mich. 2022), *and appeal
dismissed*, No. 22-2088, 2023 WL 8613874 (6th Cir. July 10, 2023), *and motion for relief from
judgment denied*, 645 F. Supp. 3d 722 (E.D. Mich. 2022), *and appeal dismissed*, No. 22-2088,
2023 WL 8613874 (6th Cir. July 10, 2023).

unlawful for law enforcement to retain firearms when they do not know who owns them. Summary judgment will be granted to Defendant on Plaintiffs' twelfth and final claim.

IV.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. 82, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 90, is **GRANTED.**

Further, it is **ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE.**

Further, it is **ORDERED** that Plaintiffs' Motion for Discovery, ECF No. 83, is **DENIED AS MOOT.**

Further, it is **ORDERED** that Plaintiffs' Motion for Status Conference, ECF No. 96, is **DENIED AS MOOT.**

**This is a final order and closes the above-captioned case.**

Dated: March 29, 2024                                    s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge