**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

GERALD NOVAK and
ADAM WENZEL,

Plaintiffs,

Case No. 1: 21-cv-12008
District Judge Michael C. Martin

v.

WILLIAM L. FEDERSPIEL,
in his official and individual capacity

Defendant.
_______________________________/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND ORDERING LIMITED DISCOVERY**

In this now six-year-old case, Plaintiffs Gerald Novak and Adam Wenzel seek the return of fourteen firearms held by the Saginaw County Sheriff's Office under the leadership of Defendant Saginaw County Sheriff William Federspiel. These firearms were taken as part of the instrumentalities of a crime committed by a third party, Benjamin Heinrich, who is not a party to this lawsuit.

This case has seen many iterations, the most recent of which saw this Court grant summary judgment in favor of Defendant, which the Sixth Circuit reversed in part and subsequently remanded the case to this Court to address Plaintiffs' surviving official-capacity and injunctive-relief Fifth Amendment Takings claims, Second Amendment official-capacity claim, and Michigan state law claim-and-

delivery claim. After remand, Plaintiffs filed a renewed request for a preliminary injunction — renewed, that is, because this Court denied their earlier motion. (*See* ECF No. 62.) In their renewed motion, Plaintiffs seek an order from the Court requiring Defendant to give them possession of the firearms.

Plaintiffs' renewed motion is not the only issue before the Court. After remand, this Court ordered supplemental briefing seeking information, in part, on the ownership of the fourteen seized firearms, whether discovery should be reopened, and, if so, what the scope of the discovery should be. The Court held a hearing on these issues on October 21, 2026.

For the reasons below, the Court will deny Plaintiffs' renewed motion for a preliminary injunction and reopen discovery for the limited purposes of determining ownership of the fourteen firearms and addressing Plaintiffs' remaining *Monell* claims.

## I. BACKGROUND

On October 23, 2017, Saginaw County Sheriff's deputies responded to a domestic violence incident involving Benjamin Heinrich at a cabin in Merrill, Michigan. *Novak v. Federspiel*, 140 F.4th 815, 818 (6th Cir. 2025). Heinrich admitted to taking a firearm from the gun cabinet in the cabin's bedroom and used it to force his child's mother from the home. *Id.* Deputies arrested Heinrich and took fourteen firearms from the cabin, including the gun used in the commission of

his crime. *Id.* Heinrich pleaded guilty in state court, completed a year of probation, and was discharged from supervision in January 2019. *Id.* Despite Heinrich's release from supervision, the Sheriff's Office maintained possession of the firearms since the domestic violence incident. This fact is the lynchpin to the allegations underlying Plaintiffs' claims.

Plaintiffs are Gerald Novak — Heinrich's uncle and owner of the cabin where the firearms were stored — and Adam Wenzel, also a relative of Heinrich's. *Id.* at 819. They claim that Novak owns twelve of the firearms and Wenzel owns the remaining two, although they admit that they do not have any documentation proving ownership of the firearms. *Id.* They maintain that neither participated in, nor authorized, Heinrich's criminal conduct. *Id.*

Plaintiffs subsequently sought return of the firearms, the means of which has been long and protracted. That protracted litigation ultimately resulted in Plaintiffs filing a complaint in this Court in August of 2021 (ECF No. 1), and then filing a twelve-count amended complaint in July of 2023 (ECF No. 79). Notably, many of these counts alleged constitutional violations, for which Defendant was sued in both his individual *and* official capacities, along with several state law claims, and a claim under the Fifth Amendment for injunctive relief seeking the return of the firearms. (*See generally id.*)

Cross-motions for summary judgment were filed next (ECF Nos. 82, 90), and this Court granted summary judgment in favor of Defendant and denied Plaintiffs' motion for partial summary judgment (*see* ECF No. 97). Plaintiffs then appealed that decision to the Sixth Circuit, which reversed the grant of summary judgment as to the Fifth Amendment Takings injunctive relief and official-capacity claims, Second Amendment official-capacity claims, and also Plaintiffs' state law claim-and-delivery action. *Novak*, 140 F.4th at 825–26.

As the Sixth Circuit made clear in its opinion, all Plaintiffs' surviving claims begin with one threshold question: do they own the firearms currently in possession of the Saginaw County Sheriff's Office? *See id.* at 821, 823, 825. While Plaintiffs have supplied affidavits averring that they possess the firearms (*see* ECF Nos. 32–6, 32–7, 32–12), the Sixth Circuit explained that those affidavits only "create a genuine issue of material fact as to the ownership of the firearms," but "do not put that fact beyond dispute." *Novak*, 140 F.4th at 821. The Sixth Circuit further espoused that it saw "no reason why the parties would be precluded from pursuing discovery related" to the surviving official-capacity claims and the claim for injunctive relief on remand. *Id.*

On remand, the Court ordered supplemental briefing addressing three discrete questions: (1) which party has the burden of demonstrating ownership of the guns seized by the Defendant, (2) how should the case proceed on remand, and

(3) should this Court reopen discovery to develop who owned the guns? (ECF No. 105, PageID.2999.) The parties responded, both arguing that the other is required to establish ownership of the seized firearms and both seeking limited discovery, with Defendant seeking discovery as to who owns the firearms and Plaintiffs seeking limited discovery as to their *Monell* claims.[1] (*See generally* ECF Nos. 106, 108.)

Plaintiffs then filed a renewed motion for preliminary injunction. (ECF No. 107.) They seek the immediate return of the firearms that are currently in the possession of the Saginaw County Sheriff's Office, which Defendant opposes. (ECF No. 110.) The Court heard oral argument on the motion on October 21, 2026. For the following reasons, the Court will deny Plaintiffs' renewed motion and will open discovery on two discrete topics: ownership of the fourteen seized firearms and Plaintiffs' surviving official-capacity claims.

---

[1] Official capacity claims, like Plaintiffs' Fifth Amendment Takings and Second Amendment claims, are effectively suits against the municipality. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985)); *see also Direct Constr. Servs., LLC v. City of Detroit, Michigan*, 820 F. App'x 417, 425 (6th Cir. 2020).

## II. STANDARD

A court may issue preliminary injunctions as part of its equitable discretion. Fed. R. Civ. P. 65(a); *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009). However, such relief "is an extraordinary remedy." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Therefore, a preliminary injunction may only be granted "if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citing *Leary*, 228 F.3d at 739). That burden is met when the movant establishes four factors. *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025). These include that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## III. MOTION FOR PRELIMINARY INJUNCTION

### A. Likelihood of Success on the Merits.

To obtain a preliminary injunction, Plaintiffs must first show a likelihood of success on either their Fifth Amendment Takings, Second Amendment, or

Michigan claim-and-delivery claims. *See Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, & Kentucky, Inc. v. Cameron*, 599 F. Supp. 3d 497, 506 (W.D. Ky. 2022) ("The moving party need only show a likelihood of success on the merits on one claim where there are multiple claims at issue in a complaint."). However, they are unable to do so for a simple reason: the Sixth Circuit has already elucidated that the affidavits Plaintiffs rely on do not – standing alone – demonstrate that they own the firearms seized by the Saginaw County Sheriff's Office. *See Novak*, 140 F.4th at 821. Rather, these affidavits create an issue of material fact. *See id.* ("These affidavits create a genuine issue of material fact as to the ownership of the firearms. But the affidavits do not put that fact beyond dispute…"). And while that may be enough to survive a motion for summary judgment, the required proof to obtain a preliminary injunction is more stringent. *Leary*, 228 F.3d at 739. Indeed, Plaintiffs need to show an actual *likelihood* of success on the merits. *EOG Res., Inc.*, 134 F.4th at 874. Each of Plaintiffs' surviving claims, to be successful, require *actual* ownership of the firearms in question. *See Knick v. Township of Scott*, 588 U.S. 180, 185 (2019) ("A property owner has an actionable Fifth Amendment takings claim when the government takes *his* property without paying for it.") (emphasis added); *Novak*, 140 F.4th at 824 (explaining that relevant questions remaining for Plaintiffs' Second Amendment claim is "whether [they] in fact owned these guns. And second, if so, whether Federspiel's possession of them has

been 'consistent with the Nation's historical tradition of firearm regulation.'") (quoting *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 24 (2022)); *O'Connor v. State*, 345 Mich.App. 595, 9 N.W.3d 351, 360–61 (2023) ("[A]n action for claim and delivery seeks the return of property wrongfully taken and held and allows damages for the period of wrongful detention.").

In fact, the *only* evidence offered by Plaintiffs to prove their ownership of the firearms is their own affidavits, and the affidavit of Benjamin Heinrich. But these self-serving affidavits – standing alone – fall short of making Plaintiffs success at trial "likely." This is because evaluating Plaintiffs' evidence boils down to a credibility determination, which the Sixth Circuit explicitly recognized. *Novak*, 140 F.4th at 821 ("But the affidavits do not put that fact beyond dispute, and Novak's and Wenzel's credibility is for a factfinder to evaluate."). The Court finds it far from "clear" that a jury would "likely" find Plaintiffs' entirely credible.

Consider, for example, the context. Plaintiff Novak's affidavit says that he allowed "Heinrich and his girlfriend and their daughter to reside at [a] deer-hunting cabin-house I own in Merrill." (ECF No. 32-6, PgID.1936.) Allowing a relative to live in a deer-hunting cabin is one thing, but a reasonable jury could believe that Novak would not leave fourteen unsecured firearms in a cabin where a young child was living.

Then there is the police report from Heinrich's arrest, which Plaintiffs themselves provided to the Court during prior briefing. (ECF No. 32-2, PgID.1920.) According to the police report, Heinrich gave a Mirandized statement to one of the officers the night of his arrest. In the statement, Heinrich admitted that he became upset with his girlfriend because she would not make their child stop crying. (*Id.* at PgID.1922.) In response, Heinrich said he "grabbed *his* New England 410 rifle" which he showed to his girlfriend while ordering her to leave the house. (*Id.* (emphasis added).) The report contains no indication that Heinrich told the officers that the guns in the deer-hunting cabin belonged to anyone else. Three years after the incident, Heinrich signed an affidavit claiming that none of the guns were his. (ECF No. 32-12, PgID.1974.) But the credibility of that affidavit may very well be undermined by the fact that it appears to have been prepared solely for purposes of litigation as it was notarized by Plaintiff Novak's counsel. (*See* ECF No. 32-12.)

In any event, the Court is not in a position to say that Plaintiffs' credibility is so strong that they are likely to prevail. The Court can only read the affidavits as attached to Plaintiffs' briefs, without being able to assess the strength of their probable credibility to a jury. Had Plaintiffs chosen to present live testimony at the October 21, 2026 hearing, the Court may have found their testimony to be more credible. Live testimony would, of course, have subjected Plaintiffs to cross-

examination, which is "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970). Had the witnesses testified in person, the Court may have concluded their testimony to be more persuasive or may have concluded that the witnesses were not likely to be persuasive to a jury. Regardless, the affidavits themselves, within the context of the rest of the case, do not convince the Court independently of a likelihood of success on the merits.

Plaintiffs' primary response is that the affidavits are unrebutted and that Defendant has produced no evidence identifying a competing owner. (ECF No. 107, PageID.3024–25.) But that argument places weight on Defendant's failure of proof and, at the preliminary injunction stage, it is Plaintiffs who bear the burden of demonstrating a likelihood of success. *Am. C.L. Union Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) ("[t]he party seeking a preliminary injunction bears the burden of justifying such relief.") (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). Defendant's inability to establish non-ownership does not itself establish that Plaintiffs are likely to *prove* ownership. Thus, this factor favors denying the motion.

**B. Irreparable Harm**

Plaintiffs argue that they have suffered irreparable harm because their Fifth and Second Amendment rights have been violated. (ECF No. 107, PageID.3030–31.) Plaintiffs are correct that Sixth Circuit precedent presumes irreparable injury

when constitutional rights are threatened or impaired, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012), and Defendant's retention of their firearms is ongoing, so it would be considered "immediate," *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023). But the alleged constitutional injury at issue here depends upon an unresolved issue of fact: whether Plaintiffs own the firearms. As explained above, Plaintiffs have demonstrated a triable question but have not demonstrated a likelihood of establishing that they own the firearms in question. And without "clearly" establishing that they own the firearms, they are not able to "clearly" establish that they have been harmed at all. *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019); *EOG Res., Inc.*, 134 F.4th at 885 ("No irreparable harm? No preliminary injunction."). This fact alone weighs in favor of denying Plaintiffs' requested relief.

But there is another reason why Plaintiffs cannot establish irreparable harm. As Defendant argues, Plaintiffs' injury is not irreparable because it can be assigned monetary value. (ECF No. 110, PageID.3065–67.) Indeed, harm "is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). A harm is not fully compensable by money damages, however, if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). When addressing Plaintiffs' original preliminary injunction motion,

this Court held that, because the serial numbers are known for the firearms in question, they are fully identifiable makes and models; thus, they are also fully compensable by money damages. *Novak v. Federspiel*, 649 F. Supp. 3d 562, 571 (E.D. Mich. 2023) (citing *United States v. Fonseca*, 790 F.3d 852, 854 (8th Cir. 2015) ("Absent proof that a firearm was unique, the actual loss resulting from a theft of a firearm…includes the fair market value of the stolen firearms.").

Plaintiffs' have also not suffered from irreparable harm for the independent reason that their injury is fully compensable.

**C. Balance of Equities and the Public Interest**

The final two factors – the balance of equities and the public interest – do not favor Plaintiffs either. When the government is the opposing party, the "balance of equities" factor merges with the "public interest" factor. *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023). In considering these factors, the Court must "balance the competing claims of injury" and consider "the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The Sixth Circuit has also emphasized that preliminary relief serves to preserve the parties' relative positions while their case is litigated. *See EOG Res., Inc.*, 134 F.4th at 883–84 ("The preliminary injunction simply puts the case in a holding pattern and

'balance[s] the equities as the litigation moves forward.'") (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017)).

Plaintiffs argue that both considerations favor immediate return of the firearms. They contend that Defendant has no ownership interest in the firearms and no longer needs them as evidence. (ECF No. 107, PageID.3031.) Thus, according to them, continued retention harms them while returning the firearms imposes no cognizable hardship on Defendant. (*Id.*) They also contend that the public has an interest in preventing constitutional violations and ensuring government compliance with the law. (*Id.* at PageID.3032.)

Defendant responds that the balance of equities and public interest is not served by requiring the Sheriff to relinquish fourteen firearms before Plaintiffs have established ownership. (ECF No. 110, PageID.3067–68.) Defendant also maintains that retaining the firearms prevents their potential transfer to Heinrich, who is prohibited from possessing firearms after his state case. (*Id.* at PageID.3068.) Finally, Defendant argues that Plaintiffs failed to follow the correct proceedings in state court to initiate the return of the firearms, if indeed they truly do own them. (*Id.* at PageID.3069–70.)

On balance, these factors favor Defendant. As discussed, Plaintiffs have not demonstrated the requisite likelihood that they will establish ownership of the firearms. Maintaining Defendant's custody while that question is resolved

preserves the parties' respective positions. In fact, after the hearing on Plaintiffs' motion, this Court entered a stipulated order requiring Defendant to "not destroy, sell or otherwise dispose of the firearms that are the subject of this present litigation, until the conclusion of this present litigation including all appeals." (ECF No. 118, PgID.3108.) By contrast, granting preliminary relief would require Defendant to relinquish dangerous weapons to people who may not actually own them, or have any lawful right to them at all. *See EOG Res.*, 134 F.4th at 883–84.

Plaintiffs are correct that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979)). However, that does not favor Plaintiffs here because, as explained before, they have not demonstrated a sufficient likelihood that Defendant's continued possession of the firearms violates their constitutional rights. Defendant retaining custody of the firearms until ownership is decided better preserves the parties' competing interests. *See Novak*, 649 F. Supp. 3d at 573 (noting that "[t]here is a public interest in keeping firearms separated from domestic-violence offenders.") (citing 18 U.S.C. § 922(g)(9) (2015); Mich. Comp. Laws § 750.224(f) (2022)). Thus, the final two factors favor denying Plaintiffs' renewed motion for a preliminary injunction.

## IV. DISCOVERY

Finally, the Court will reopen discovery in a limited fashion. Defendant asks the Court to reopen discovery concerning ownership of the firearms and the information Plaintiffs provided to the Sheriff's Office when they initially sought their return. (ECF No. 106, PageID.3010–11.) Plaintiffs contend that discovery regarding ownership is unnecessary because their sworn declarations constitute unrebutted evidence of ownership (ECF No. 108, PageID.3045.) In their view, any additional discovery should be confined to the *Monell* issues relevant to their surviving official-capacity claims. (ECF No. 108, PageID.3045–46.)

In addressing Plaintiffs' takings claims, the Sixth Circuit expressly observed that, "[o]n remand, we see no reason why the parties would be precluded from pursuing discovery related to those claims." *Id.* at 821. While Plaintiffs may not believe that discovery related to ownership of the firearms is necessary, the adjudication of their official-capacity claims necessarily involves resolving the question of ownership. Accordingly, reopening discovery as to ownership of the firearms is proper.

Discovery should also encompass the *Monell* issues implicated by Plaintiffs' Fifth Amendment and Second Amendment official-capacity claims. Plaintiffs contend that they have not had an adequate opportunity to obtain discovery concerning Defendant's policies governing the retention and return of firearms,

training and supervision, and the identity and authority of the officials responsible for decisions concerning property held for safekeeping. (ECF No. 108, PageID.3045–46.) Those questions are relevant here because a plaintiff asserting a *Monell* claim must establish that a municipal policy or custom caused the alleged constitutional deprivation. *See Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). Reopening discovery in this area, too, is in line with the reasoning from the Sixth Circuit.

The Court will therefore reopen discovery for the limited purposes of (1) determining ownership of the fourteen firearms and (2) the policy, custom, and policymaking evidence relevant to Plaintiffs' surviving official-capacity claims.

## V. CONCLUSION

For the reasons stated above, it is **ORDERED** that Plaintiffs' Renewed Motion for Preliminary Injunction (ECF No. 107) is **DENIED**.

Further, it is **ORDERED** that discovery as to (1) ownership of the fourteen firearms and (2) the policy, custom, and policymaking evidence relevant to Plaintiffs' surviving official-capacity claims is reopened for **sixty (60) days. All discovery must be concluded by January 16, 2027.**

Dated: November 16, 2026

s/Michael C. Martin
MICHAEL C. MARTIN
United States District Judge